**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARTIN RACEY, KEVIN MCDONALD, GARY WILLIAMS and ALEX ABREU, Individually and on Behalf of All Others Similarly Situated,**<br><br>  **Plaintiffs,**<br><br>  -against-<br><br>  **JAY-JAY CABARET INC. d/b/a FLASH DANCERS, AAM HOLDING CORP. d/b/a PRIVATE EYES, 59 MURRAY ENTERPRISES, INC. d/b/a NEW YORK DOLLS, BARRY I. LIPSITZ and BARRY LIPSITZ, JR., Jointly and Severally,**<br><br>  **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>  **Jury Trial Demanded** |

Plaintiffs Martin Racey, Kevin McDonald, Gary Williams and Alex Abreu (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

**NATURE OF THE ACTION**

1.     Plaintiffs are former floor men for Defendants' gentleman's clubs located in Manhattan, New York County, New York. Despite the fact that they routinely worked in excess of forty (40) hours each week, Plaintiffs and Defendants' other floor man employees were paid on a per-shift basis of eight (8) hours per shift, with no overtime premium pay for hours worked over 40 hours in a given workweek.

2.     Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring this action to recover damages for violations of New York wage notice and wage statement requirements pursuant to the NYLL and the supporting regulations.

3.     Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all floor men who worked for Defendants in New York.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

2

## THE PARTIES

**Plaintiffs:**

7.      Plaintiff Racey was, at all relevant times, an adult individual residing in Queens County, New York.

8.      Plaintiff McDonald was, at all relevant times, an adult individual residing in Union County, New Jersey.

9.      Plaintiff Williams was, at all relevant times, an adult individual residing in Hudson County, New Jersey.

10.     Plaintiff Abreu was, at all relevant times, an adult individual residing in Kings County, New York.

11.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12.     Upon information and belief, Defendant Jay-Jay Cabaret Inc. was, at all relevant times, an active New York Corporation doing business as "Flash Dancers," with its principal place of business located at 1674 Broadway, New York, NY 10019.

13.     Upon information and belief, Defendant AAM Holding Corp. was, at all relevant times, an active New York Corporation doing business as "Private Eyes," with its principal place of business located at 320 West 45th Street, New York, NY 10036.

14.     Upon information and belief, Defendant 59 Murray Enterprises, Inc. was, at all relevant times, an active New York Corporation doing business as "New York Dolls," with its principal place of business located at 59 Murray Street, New York, NY 10007.

15.     Defendants Jay-Jay Cabaret Inc., AAM Holding Corp., and 59 Murray Enterprises

Inc. are hereinafter referred to collectively as the "Corporate Defendants" or the "Clubs."

16.     Defendant Barry I. Lipsitz ("Lipsitz") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Lipsitz was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

17.     Defendant Barry Lipsitz, Jr. ("Lipsitz, Jr." and together with Lipsitz, the "Individual Defendants," and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Lipsitz, Jr. was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

18.     Upon information and belief, the Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendant.

19.     Upon information and belief, the Corporate Defendants operated together as a single integrated business enterprise utilizing the same business practices and policies.

20.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants

employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

21.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

22.     Defendants' operations are interrelated and unified.

23.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## COLLECTIVE ACTION ALLEGATIONS

24.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since October 19, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as floor men and/or security employees (the "Collective Action Members").

25.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

26.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## <u>CLASS ACTION ALLEGATIONS</u>

27.    Pursuant to the NYLL, Plaintiffs bring their Second through Fourth Causes of

Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the

following class:

> All persons employed by Defendants in New York at any time
> since October 19, 2009 and through the entry of judgment in this
> case (the "Class Period") who worked as floor men and/or security
> employees (the "Class Members").

28.    <u>The Class Members are readily ascertainable</u>. The number and identity of the

Class Members are determinable from the records of Defendants. For purposes of notice and

other purposes related to this action, their names and addresses are readily available from

Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure

23.

29.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

30.    Upon information and belief, there are in excess of forty (40) Class Members.

31.    <u>Common questions of law and fact exist as to all Class members and predominate</u>

<u>over any questions solely affecting individual Class members</u>. Such common questions will

determine Defendants' liability to all (or nearly all) Class Members. These common questions

include:

a.   whether Defendants employed Plaintiff and the Class Members within the meaning of

the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked

by Plaintiff and the Class Members;

c.   whether Defendants failed and/or refused to pay Plaintiff and the Class Members

overtime premiums for hours worked in excess of forty (40) hours per workweek;

d.  whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

e.  whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

f.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

g.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

32.     The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiff on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

33.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

34.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

7

35.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

36.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. The individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendant. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Gentleman's Clubs

37.     At all relevant times, Defendants have been in the business of owning and operating gentleman's clubs.

38.     Upon information and belief, Defendants currently own, operate and manage three (3) gentleman's clubs in Manhattan: "Flash Dancers" located at 1674 Broadway, New York, NY 10019; "Private Eyes" located at 320 West 45th Street, New York, NY 10036; and "New York Dolls" located at 59 Murray Street, New York, NY 10007.

39.     According to the New York State Department of State -- Division of Corporations filings, Defendant Lipsitz is the Chief Executive Officer of 59 Murray Enterprises, Inc.

40.     Although Defendant Lipsitz is not identified in the New York State Department of State Division of Corporations filings for Jay-Jay Cabaret, Inc. or AAM Holding Corp., upon information and belief, Lipsitz and his son, Lipsitz Jr., are the owners of all three (3) clubs listed

in paragraph 38 and their respective corporate entities listed in paragraphs 12 through 14.

41.     Upon information and belief, the Corporate Defendants operate together as a single integrated business enterprise with shared ownership, management, employees, policies, and employment practices.

42.     During all relevant times, Defendants allowed employees to be shared or freely transferred by and between the Clubs.

43.     Throughout the relevant time period, Defendants' integrated business had maintained a strong, interconnected advertising, branding, internet, and social media presence.

44.     The website for each club contains a "Locations" section which provides the names, addresses, and phone numbers of all three Clubs, as well as a link to each Club's individual website. (See www.nydollsclub.com; www.flashdancersnyc.com; www.privateeyesnyc.com ).

**Plaintiffs' Work for Defendants**

45.     Plaintiff Racey was employed by Defendants as a floor man from in or around December 2013 through in or around July 2015 (the "Racey Employment Period").

46.     Throughout the Racey Employment Period, Racey worked at Flash Dancers and Private Eyes, generally four (4) nights at Flash Dancers and one (1) night at Private Eyes each week.

47.     Throughout the Racey Employment Period, Plaintiff Racey typically worked five (5) or six (6) days per week from approximately 7:30 pm to between 4:45 am and 5:30 am, and sometimes later, for a total of between approximately forty-seven and sixty (47- 60) hours per week.

48.     For his work, throughout the Racey Employment Period, Plaintiff Racey was paid

on a per-shift basis of $200 per shift, plus tips from bottle service sales to customers.

49.    Plaintiff McDonald was employed by Defendants as a floor man from in or around June 2014 through on or about April 22, 2015 (the "McDonald Employment Period").

50.    Throughout the McDonald Employment Period, McDonald generally worked at all three of Defendants' Clubs during each week of his employment.

51.    Throughout the McDonald Employment Period, McDonald typically worked five (5) days per week, from approximately 7:30 pm to between approximately 4:45 am and 6:00 am, for a total of between approximately forty-six and fifty-three (46-53) hours per week, and sometimes more.

52.    For his work, for the first two (2) weeks of his employment, McDonald was paid on a per-shift basis of $150 per shift and thereafter was paid $175 per shift for the remainder of the McDonald Employment Period.

53.    Plaintiff Williams was employed by Defendants as a floor man from in or around July 2014 through in or around September 2015 (the "Williams Employment Period").

54.    Throughout the Williams Employment Period, Williams worked at all three of Defendants' Clubs: Flash Dancers, Private Eyes and New York Dolls.

55.    Throughout the Williams Employment Period, Williams typically worked five (5) days per week, from approximately 7:30 pm to between approximately 4:45 am and 6:00 am, for a total of between approximately forty-six to fifty-three (46-53) hours per week, and sometimes more.

56.    For his work, throughout the Williams Employment Period, Williams was paid on a per-shift basis of $150 per shift.

57.    Plaintiff Abreu worked for Defendants from in or around 2003 through 2008 and

again from in or around January 2010 through December 2014 (the "Abreu Employment Period").

58.     Throughout the relevant time period, Abreu worked primarily at Flash Dancers but also occasionally worked at New York Dolls and Private Eyes.

59.     Throughout the Abreu Employment Period, Abreu generally worked five (5) and sometimes six (6) days per week, from approximately 7:30 pm to between approximately 4:45 am and 6:00 am, for a total of between forty-seven and sixty-two (47-62) hours per week, and sometimes more.

60.     When working at Flash Dancers, Abreu would routinely have to stay at the club until between 5:30 am and 6:00 am. When working at New York Dolls and Private Eyes, Abreu would generally be able to leave the club at approximately 5:00 am, yet he occasionally would have to stay as late as 5:30 am.

61.     For his work, throughout the relevant time period, Abreu was paid on a per-shift basis which started at $140 per shift and was increased to $200 per shift in or around February 2014.

62.     Plaintiffs' and Defendants' other floor men's duties included seating customers, selling bottles of alcohol to customers, assisting the doorman with clearing out the customers and making sure that the dancers had transportation home, and providing general protection of the dancers and customers, among other duties

63.     Despite the fact that Plaintiffs worked well beyond their scheduled shift of 7:30 pm to 4:00 am each day, Plaintiffs were not paid any compensation for work performed beyond 4:00 am.

64.     Notwithstanding the fact that Defendants' clubs "closed" at 4:00 am each

morning, Plaintiffs and Defendants' other floor men and security employees were not allowed to leave the club until the manager left the club, which was after all of the customers and other employees left. Customers were permitted to stay in the club well beyond 4:00 am if they were in a private room, which were rented by the hour. If, for example, a customer purchased an hour in a private room beginning at 3:45 am, he or she would not be finished with the room until at least 4:45 am. At that point, the cashier would have to count out the tips to the dancer, hostess and manager, and, although the floor men were not sharing in the tips from the rental of the private rooms, they were required to stay until the manager left the club. Even on nights where there were no private rooms being rented beyond 4:00 am, the counting of tips and cashing out procedures were performed after the club closed at 4:00 am, which required that Plaintiffs and Defendants' other floor men and security employees stayed at the club until the other employees had left, generally well beyond 4:00 am.

65.     Plaintiffs' understanding was that they were paid their shift pay based on an 8-hour shift, which was their 7:30 pm to 4:00 am schedule, with a 30 minute break.

66.     Plaintiffs rarely were able to take a full 30-minute uninterrupted lunch break during their shifts.

67.     Notwithstanding the fact that Plaintiffs worked well in excess of 40 hours each week, Defendants failed to pay Plaintiffs overtime premium pay for hours worked over 40 each week.

68.     Plaintiffs did not receive proper wage statements with their wage payments including an accurate breakdown of their hours into regular and overtime hours. Defendants' failure to provide Plaintiffs with proper wage statements was a corporate policy which applied to all Class Members.

12

69.    Defendants failed to provide Plaintiffs with a wage notice at the date of their hiring or by February 1 of each year. Defendants' failure to provide proper wage notice and wage statements was a corporate policy which applied to all Plaintiffs and Class Members.

70.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay overtime premiums and failing to provide proper wage notice and wage statements.

71.    Plaintiffs have spoken with other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period and were similarly not paid one and one-half (1.5) times their regular rate for certain hours worked over forty (40) hours in a week. Defendants' failure to pay Plaintiffs and the Class Members overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their floor men throughout the relevant period.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**

72.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

74.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

75.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

76.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

78.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS</u>

79.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Class Member within the meaning of the NYLL, §§ 2 and 651.

81.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

82.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS

83.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     Defendants have willfully failed to supply Plaintiffs and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the hourly rate or rates of pay and overtime rate or rates of pay, if applicable, and the number of overtime hours worked.

85.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective and Class Action Members, respectfully request that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b)

16

and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.       Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.       An order tolling the statute of limitations;

d.       A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.       An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.       An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.       An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.       Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

17

i.     One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.     An award of prejudgment and post-judgment interest;

k.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.     Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      October 19, 2015

**PELTON & ASSOCIATES PC**

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative Collective and Class*

18

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 59 Murray Enterprises Inc., AAM Holding Corp. and Jay Jay Cabaret Inc. d/b/a NY Dolls, Flash Dancers and Private Eyes, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

| | | |
|---|---|---|
| _____ | _10-7-15_ | _MARTIN RACEY_ |
| Signature | Date | Printed Name |

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 59 Murray Enterprises Inc., AAM Holding Corp. and Jay Jay Cabaret Inc. d/b/a NY Dolls, Flash Dancers and Private Eyes, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          9/28/15          Kevin McDonald
     Signature                                    Date                              Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 59 Murray Enterprises Inc., AAM Holding Corp. and Jay Jay Cabaret Inc. d/b/a NY Dolls, Flash Dancers and Private Eyes, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


| | | |
|---|---|---|
| _____ | 10/08/2015 | Gary Williams |
| Signature | Date | Printed Name |

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of 59 Murray Enterprises Inc., AAM Holding Corp. and Jay Cabaret Inc. d/b/a NY Dolls, Flash Dancers and Private Eyes, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          10/12/15          Hey Abreu
Signature                            Date                Printed Name