IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARTIN RACEY, KEVIN MCDONALD, GARY
WILLIAMS and ALEX ABREU, Individually and
on Behalf of All Others Similarly Situated,

                                        Plaintiffs,

-against-                                                    15 Civ. 8228 (KPF)

JAY-JAY CABARET INC. d/b/a FLASH
DANCERS, AAM HOLDING CORP. d/b/a
PRIVATE EYES, 59 MURRAY ENTERPRISES,
INC. d/b/a NEW YORK DOLLS, BARRY I.
LIPSITZ and BARRY LIPSITZ, JR., Jointly and
Severally,

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND COURT AUTHORIZED NOTICE PURSUANT TO
SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT**

---

Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 3

I.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, COURT
     AUTHORIZED NOTICE AND DISCLOSURE OF CONTACT INFORMATION
     PURSUANT TO § 216(b) SHOULD BE DENIED ........................................ 3

     A.  Plaintiffs Have Not Satisfied Their Burden on Conditional Certification .................. 3

         1.  Legal Standard ...................................................................................... 3

         2.  Plaintiffs Have Failed to Show That They Are Similarly Situated to Potential
             Opt-in Plaintiffs ................................................................................... 5

         3.  A Collective Action Is Inappropriate Because Potential Members of the Putative
             Collective Are Bound By Arbitration Agreements ................................ 12

         4.  The Court Should Not Permit That Notice Be Sent to Those Who Have Signed
             Arbitration Agreements ...................................................................... 13

II.  THE COURT SHOULD DENY CONDITIONAL CERTIFICATION BECAUSE
     PLAINTIFFS CANNOT ESTABLISH A COMMON POLICY IN VIOLATION OF
     LAW ........................................................................................................... 15

     A.  Floor Men Are Exempt From Federal Overtime Requirements ............................... 15

     B.  Plaintiffs' Claims Of Joint Employment Are Conclusory And Without Merit And
         There Can Be No Violation Without Aggregating Shifts Across The Three
         Independently Owned and Operated Clubs ........................................................ 17

     C.  PLAINTIFFS' PROPOSED FORM OF NOTICE IS IMPROPER ......................... 20

         1.  Plaintiffs' Proposed Notice Is Not Neutral ........................................... 21

         2.  Plaintiffs' Proposed Notice is Misleading ............................................ 22

         3.  Plaintiffs' Request For Telephone Numbers and Email Addresses Should
             Also Be Rejected as Improper .............................................................. 23

D.   FIRST CLASS MAIL IS THE BEST MEANS OF DISTRIBUTING THE NOTICE
      AND CONSENT, AND THEREFORE POSTING IS NOT WARRANTED AT
      DEFENDANTS' RESPECTIVE PLACES OF BUSINESS....................................... 24

E.   PLAINTIFFS' PROPOSED "REMINDER" NOTICE IS UNNECESSARY ........... 25

CONCLUSION ............................................................................................................................. 26

## TABLE OF AUTHORITIES

### Cases

*Adair v. Wisconsin Bell, Inc.*,
   No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) .................................................. 4-5

*Adami v. Cardo Windows, Inc.*,
   299 F.R.D. 68 (D.N.J. 2014) ...................................................................................................... 13

*Ali v. David Bouley, LLC*,
   No. 14 Civ. 7135 (PAC) (S.D.N.Y. Feb. 10, 2016), ECF No. 68 .................................... 4, 5, 6, 7

*Ali v. New York City Health and Hosps. Corp.*,
   No. 05 Civ. 6319 (JRS), 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) ...................................... 5

*Amendola v. Bristol-Myers Squibb Co.*,
   558 F. Supp. 2d 459 (S.D.N.Y. 2008) ................................................................................... 4, 15

*Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*,
   274 F.2d 805 (2d Cir. 1960) ...................................................................................................... 14

*Bah v. Shoe Mania, Inc.*,
   No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223 (S.D.N.Y. May 13, 2009) ......................... 23

*Barfield v. New York City Health & Hosps. Corp.*,
   No. 05 Civ. 6319 (JRS), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ................................. 3-4

*Boutros v. JTC Painting and Decorating Corp.*,
   No. 12 Civ. 7576 (PAE), 2013 WL 3110943 (S.D.N.Y. June 19, 2013) ................................... 10

*Bowens v. Atl. Maint. Corp.*,
   546 F. Supp. 2d 55 (E.D.N.Y. 2008) ........................................................................................ 22

*Brooks v. BellSouth Telecomm., Inc.*,
   164 F.R.D. 561 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997) ......................... 24 n.7

*Burroughs v. Cty. of Nassau*,
   No. 13 Civ. 6784 (JS) (WDW), 2014 WL 2587580 (E.D.N.Y. June 9, 2014) ................... 10 n.4

*Castro v. Spice Place, Inc.*,
   No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) ........................................... 18, 19

*Clausnitzer v. Fed. Express Corp.*,
   248 F.R.D. 647 (S.D. Fla. 2008) ............................................................................................... 13

iii

*Colson v. Avnet, Inc.*,
    687 F. Supp. 2d 914 (D. Ariz. 2010) ....................................................................... 7

*Crawford v. Dothan City Bd. Of Educ.*,
    214 F.R.D. 694 (M.D. Ala. 2003) ...................................................................... 24 n.7

*Diaz v. Elecs. Boutique of Am., Inc.*,
    No. 04 Civ. 0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) .............................. 3, 12

*Donovan v. Burger King Corp.*,
    672 F.2d 221 (1st Cir. 1982) ............................................................................... 15

*Donovan v. Burger King Corp.*,
    675 F.2d 516 (2d Cir. 1982) ............................................................................... 15

*Feng v. Hampshire Times*,
    No. 14 Civ. 7102 (SHS) (JLC), 2015 WL 1061973 (S.D.N.Y. Mar. 11, 2015) ......................... 6

*Flores v. Osaka Health Spa, Inc.*,
    No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) .................... 4, 5, 6

*Fraticelli v. MSG Holdings, Inc., L.P.*,
    No. 13 Civ. 6578 (JMF), 2014 WL 1807105 (S.D.N.Y. May 7, 2014) ....................................... 6

*Gayle v. United States*,
    85 Fed. Cl. 72 (2008) ........................................................................................ 21

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 91 (S.D.N.Y 2003) ....................................................................... 22

*Gordon v. Kaleida Health*,
    No. 08 Civ. 378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ........................................ 23

*Guaman v. 5 "M" Corp.*,
    No. 13 Civ. 03820 (LGS), 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) ............................... 19

*Guillen v. Marshalls of MA, Inc.*,
    841 F. Supp. 2d 797 (S.D.N.Y. 2012) ...................................................................... 4

*Guzelgurgenli v. Prime Time Specials Inc.*,
    883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..................................................................... 25

*Guzman v. VLM, Inc.*,
    No. 07 Civ. 1126 (JG) (RER), 2007 WL 2994278 (E.D.N.Y. Oct. 11, 2007) ...................... 21, 22

*Hall v. Guardsmark, LLC*,
    No. 11 Civ. 213, 2012 WL 3580086 (W.D. Pa. Aug. 17, 2012) ......................................... 7, 8

*Hallissey v. Am. Online, Inc.*,
   No. 99 Civ. 3785 (KTD), 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ............................ 22, 23

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ................................................................................... 3, 14, 20, 21

*Ikikhueme v. CulinArt, Inc.*,
   No. 13 Civ. 293 (JMF), 2013 WL 2395020 (S.D.N.Y. June 3, 2013) ........................................ 7

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. 2013) ............................................................................ 14

*Khan v. Airport Mgmt. Servs., LLC*,
   No. 10 Civ. 7735, 2011 WL 5597371, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) .............. 4

*Krstic v. J.R. Contracting & Envtl. Consulting*,
   No. 09 Civ. 2459 (PGS), 2010 WL 395953 (D.N.J. Feb. 4, 2010) ........................................... 12

*Krueger v. New York Tel. Co.*,
   No. 93 Civ. 0178 (LMM), 1993 WL 276058 (S.D.N.Y. July 21, 1993)................................... 21

*Laroque v. Domino's Pizza, LLC*,
   557 F. Supp. 2d 346 (E.D.N.Y. 2008)........................................................................... 3

*Levinson v. Primedia Inc.*,
   No. 02 Civ. 222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) .......................... 3, 6, 20

*Mazur v. Olek Lejbzon & Co.*,
   No. 05 Civ. 2194 (RMB) (DF), 2005 WL 3240472 (S.D.N.Y. Nov. 30, 2005) .................. 22-23

*Mendoza v. Casa de Cambio Delgado, Inc.*,
   No. 07 Civ. 2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ...................................... 4, 6

*Mike v. Safeco Ins. Co. of Am.*,
   274 F. Supp. 2d 216 (D. Conn. 2003) ............................................................................ 12

*Morales v. Plantworks, Inc.*,
   No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y Feb. 2, 2006) ...................................... 5, 6

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010).................................................................................... 3, 4

*Pablo v. ServiceMaster Glob. Holdings Inc.*,
   No. C 08–03894 SI, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011)............................................ 14

*Prizmic v. Armour*,
  No. 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006)............. 5, 24 n.7

*Roebuck v. Hudson Valley Farms, Inc.*,
  239 F. Supp. 2d 234 (N.D.N.Y. 2002) ..................................................... 21

*Romero v. H.B. Auto. Grp., Inc.*,
  No. 11 Civ. 386 CM, 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ............................ 3

*Russell v. Wells Fargo & Co.*,
  No. C 07-3993, 2008 WL 4104212 (N.D. Cal. 2008) ............................................ 24

*Salomon v. Adderley Indus., Inc.*,
  960 F. Supp. 2d 502 (S.D.N.Y. 2013) .................................................... 17

*Seever v. Carrols Corp.*,
  528 F. Supp. 2d 159 (W.D.N.Y. 2007) ................................................... 12

*Slamna v. API Rest. Corp.*,
  No. 12 Civ. 757 (RWS), 2013 WL 3340290 (S.D.N.Y. July 2, 2013) ...................... 23

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ......................................................... 14

*Trinidad v. Pret A Manger (USA) Ltd.*,
  962 F. Supp. 2d 545 .................................................................... 19

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
  No. 10 Civ. 8820 (LTS) (THK), 2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011) ............. 4

*Velasquez v. Digital Page, Inc.*,
  No. CV 11–3892(LDW) (AKT), 2014 WL 2048425 (E.D.N.Y May 19, 2014) ........... 22

*Wolters Kluwer Fin. Servs. Inc. v. Scivantage*,
  No. 07 Civ. 2352 (HB), 2007 WL 1098714 (S.D.N.Y. Apr. 12, 2007) ................... 10 n.4

## **Statutes**

29 U.S.C. § 213(a)(1).......................................................................... 15

29 U.S.C. § 216(b) ............................................................................. 3

N.Y. Lab. Law § 203-d (McKinney) .......................................................... 23

**<u>Regulations</u>**

29 C.F.R. § 541.100(a) ................................................................................................ 15

29 C.F.R. § 541.701 .................................................................................................... 16

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.2(c)(1) .............................................. 15

**<u>Other Authorities</u>**

*7B Federal Practice & Procedure* § 1807 at 490-91 (3d ed. 2005) ............................... 5

# INTRODUCTION[1]

Defendants JAY-JAY CABARET INC. d/b/a FLASH DANCERS ("Flash"), AAM HOLDING CORP. d/b/a PRIVATE EYES ("Private Eyes"), 59 MURRAY ENTERPRISES, INC. d/b/a NEW YORK DOLLS ("NY Dolls"), BARRY I. LIPSITZ ("Lipsitz Sr.") and BARRY LIPSITZ, JR. ("Lipsitz Jr.") (collectively "Defendants"), respectfully submit this memorandum of law in opposition to the motion of plaintiffs MARTIN RACEY ("Racey"), KEVIN MCDONALD ("McDonald"), GARY WILLIAMS ("Williams") and ALEX ABREU ("Abreu") (Racey, McDonald, Williams and Abreu are collectively referred to herein as the "Named Plaintiffs" or the "Plaintiffs"), individually and on behalf of all others similarly situated (the "Putative Collective"), for conditional certification and court authorized notice pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA").

# PRELIMINARY STATEMENT

Plaintiffs' pre-discovery motion for collective action certification under §216(b) of the FLSA suffers from a fatal flaw: the conclusory testimonial evidence submitted by Plaintiffs in support of their motion is insufficient to even raise an inference that a common policy or plan existed at Flash, Private Eyes and/or NY Dolls gentlemen's clubs with respect to "off the clock" work or failing to pay overtime compensation to "floor men" in violation of the law.[2]  Without a shred of proof of a common unlawful policy or plan by each of the three independently owned and operated clubs beyond conclusory, contradictory and internally inconsistent declarations from Named Plaintiffs only, Plaintiffs cannot be found to be similarly situated to the Putative Collective, and therefore, no collective action can be certified.

---

[1]    Defined terms herein have the same meaning ascribed to them in the accompanying Declaration of Jeffrey Kimmel (the "Kimmel Dec.") and in the accompanying Declarations of Flash manager Robert Klotsche ("Klotsche Dec."), NY Dolls manager Sean Hennigan ("Hennigan Dec.")), Private Eyes manager Amir Khan ("Khan Dec."), and putative collective members Jean Theodore ("Theodore Dec."), James Atkinson ("Atkinson Dec.") and Samory Greene ("Greene Dec.").

[2]    While Plaintiffs' Complaint and motion refer to floor men and security employees, all substantive allegations refer only to "floor men" and do not relate to security guards which are another category of worker.

Plaintiffs' vague declarations as to Defendants do not provide any evidence of an actual policy or plan that violates the FLSA across the three defendant clubs here or even at any single defendant club.   While Named Plaintiffs' own declarations fail to establish a violation as it relates to themselves, such declarations also do not establish that Named Plaintiffs have personal knowledge of any alleged policy concerning any other Putative Collective members.   Moreover, the bare allegations in Plaintiffs' Complaint signed by counsel, which contradict many of the statements set forth in Named Plaintiffs' declarations, are entirely insufficient to support certification.   The declarations submitted with this memorandum, including from putative collective members, contradict much of what Named Plaintiffs assert with regard to fundamental threshold facts, including hours worked.   As such, the Named Plaintiffs have failed to prove a common policy or plan that applied to all Putative Collective members.

Moreover, significant issues have to be determined on an individualized basis with respect to each plaintiff in the proposed collective, such as, for example, whether each plaintiff allegedly worked sufficient hours to warrant overtime compensation and/or received insufficient compensation, whether a particular plaintiff is an inappropriate member of the Putative Collective as a result of binding arbitration agreements entered into with Defendants and whether each plaintiff was purportedly jointly employed by Defendants under a single integrated enterprise.

As will be shown herein, Plaintiffs' declarations and the Complaint are not sufficient to warrant certification of a collective.   There are no facts to show a factual nexus among Named Plaintiffs and the members of the proposed collective.   Without more, the Court cannot conditionally certify a collective action.   Consequently, Plaintiffs' pre-discovery motion should be denied in its entirety.

## ARGUMENT

**I.    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, COURT AUTHORIZED NOTICE AND DISCLOSURE OF CONTACT INFORMATION PURSUANT TO § 216(b) SHOULD BE DENIED**

### A.    Plaintiffs Have Not Satisfied Their Burden on Conditional Certification

#### 1.  Legal Standard

The FLSA permits plaintiffs to maintain an action "for and [o]n behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b).  Courts commonly use a two-stage analysis to determine whether putative class members are "similarly situated" for purposes of certifying a FLSA claim for collective treatment under § 216(b) of the Act.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010); *Laroque v. Domino's Pizza LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008).  In the first stage, the court must make an initial determination that the members of the proposed collective are "similarly situated" and, if so, may authorize the sending of notice inviting others to "opt in" to the putative collective action.  *See, e.g., Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

It is well settled that "plaintiffs have the burden of demonstrating that they are 'similarly situated' to members of their proposed collective action."  *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E (SR), 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005); *Romero v. H.B. Auto. Grp., Inc.*, No. 11-cv-386 CM, 2012 WL 1514810, at *9 (S.D.N.Y. May 1, 2010).   While the factual showing that a plaintiff must make at this stage is sometimes referred to as "modest," it still must be "sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Levinson v. Primedia Inc.*, No. 02 Civ. 222 (CBM), 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (internal citations omitted) (denying the plaintiff's request for notice to potential class members where plaintiff failed to demonstrate that the putative class members were similarly situated); *Barfield v. New York City Health and*

*Hosps. Corp.*, No. 05 Civ. 6319 (JRS), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for conditional collective action certification under the FLSA and holding that the plaintiff did not present sufficient evidence that plaintiffs were victims of a common policy or plan that violates the law); *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735, 2011 WL 5597371, at *4-*5 (S.D.N.Y. Nov. 16, 2011) (citing *Myers*, 624 F.3d at 555).

Conditional certification "is not automatic." *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-cv-8820 (LTS)(THK), 2011 WL 2693712, at *3 (S.D.N.Y. Jul. 11, 2011)*; Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962 VM-KNF, 2006 WL 695675, at * 3 (S.D.N.Y. Mar. 16, 2006); *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 cv 2579 (HB), 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008) (observing that "conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action"). "Where a plaintiff fails to carry this burden or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial . . . a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice." *See Ali v. David Bouley, LLC*, ("Bouley") No. 14 Civ. 7135 (PAC) (S.D.N.Y. Feb. 10, 2016), ECF No. 68[3] (citing *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)).

In evaluating a request for collective action certification, where the plaintiff has not made the necessary factual showing that certification is appropriate, "[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Guillen v. Marshalls of MA, Inc*., 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) (quoting *Adair v. Wisconsin Bell, Inc*., No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis.

---

[3]        A true and correct copy of *Ali v. David Bouley, LLC*, No. 14 Civ. 7135 (PAC) (S.D.N.Y. Feb. 10, 2016), ECF No. 68 is attached to the Kimmel Dec. as Exhibit E.

Sept. 11, 2008)).  Indeed, "[a]bsent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'" *Prizmic v. Armour*, No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (citations omitted).

### 2.  Plaintiffs Have Failed to Show That They Are Similarly Situated to Potential Opt-in Plaintiffs

The limited "evidence" relied on by Plaintiffs, in the form of their own inconsistent and conclusory declarations and the Complaint, are not sufficient to satisfy the "factual showing" required for the conditional certification sought by Plaintiffs.  Plaintiffs have not established that they are similarly situated to the Putative Collective and that they were all "victims of a common policy or plan that violated the law."

Although Plaintiffs' burden at this stage is not onerous, they must provide actual evidence of a factual nexus between their situation and those which they claim are similarly situated, rather than mere conclusory allegations.  *Flores*, 2006 WL 695675, at * 3; *Morales v. Plantworks, Inc.*, No. 05-cv-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y Feb. 2, 2006); Wright, Miller & Kane, *7B Federal Practice & Procedure* § 1807 at 490-91 (3d ed. 2005) ("[c]onclusory allegations are not sufficient . . . courts requir[e] that there be some factual support and affidavits showing that the class members are 'similarly situated' ").

It has been consistently stated that a plaintiff cannot rely on "unsupported assertions" to make the factual showing necessary to achieve conditional certification at this stage. *Bouley*, No. 14 Civ. 7135, ECF No. 68, at 4 (S.D.N.Y. Feb. 10, 2016); *see also Ali v. New York City Health and Hosps. Corp.*, No. 11 Civ. 6393 (PAC), 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013) (denying conditional certification where the sole basis of plaintiffs' belief that there were other similarly situated class members who worked over 40 hours per week and were not paid overtime is plaintiff's statement that he "had conversations with other [employees] about the fact

that we worked in excess of 40 hours per week"); *Fraticelli v. MSG Holdings, Inc., L.P.*, No. 13 Civ. 6578 (JMF), 2014 WL 1807105, at *3 (S.D.N.Y. May 7, 2014)(denying conditional certification where the "Plaintiffs' affidavits contain[ed] a number of unsupported and conclusory assertions that the Court [did] not credit.").

Recently, Judge Crotty in this District denied conditional certification of an FLSA collective where "materially identical affidavits" offered only "general and conclusory allegations…." *Bouley*, No. 14 Civ. 7135, ECF No. 68, at 4 (S.D.N.Y. Feb. 10, 2016). "[I]f declarations in support of conditional certification are not required to be more probative than 'bare allegations, the requirement of factual support would be superfluous.'" *See Adair*, 2008 WL 4224360, at *10 (internal quotations and citations omitted) (holding that named plaintiff's "observations" that co-workers worked overtime without pay was insufficient to establish a common policy or that co-workers were "similarly situated"); *see also Levinson*, 2003 WL 22533428, at * 1; *Mendoza*, 2008 WL 938584, at *2; *Flores*, 2006 WL 695675, at *3 (denying certification and holding that plaintiffs allegations "offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period.").

In fact, where a plaintiff, like here, seeks to conditionally certify without sufficient factual support, courts have denied conditional certification. *See Feng v. Hampshire Times*, No. 14-CV-7102 (SHS) (JLC), 2015 WL 1061973, at *3 (S.D.N.Y. Mar. 11, 2015) (dismissing motion for conditional certification finding that affidavits submitted by plaintiffs "each contained only one short (and identical) statement" concerning other employees, which was factually insufficient to support conditional certification); *see also Morales*, 2006 WL 278154, at *3 (denying motion for conditional certification explaining "plaintiffs have offered only a

conclusory allegation in their complaint; they have offered nothing of evidentiary value" that that plaintiffs and potential class members were victims of a common scheme or plan that violated the law); *see also Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2-3 (S.D.N.Y. June 3, 2013); *see Colson v. Avnet*, 687 F. Supp. 2d 914 (D. Ariz. 2010) (denying motion for collective action certification and that declarations submitted by an individual who "observed" the performance and job duties of members of the putative collective, and was not even a member of the putative collective, had little evidentiary value).

In *Bouley*, *supra*, for example, the declarations offered by the two named plaintiffs in support of their motion for conditional certification were based on nearly identical conclusions:

> To my knowledge, all [tipped employees] employed by Defendants have been treated similarly with respect to not being paid at the minimum wage, in violation of the [FLSA], as well as also being subjected to numerous other unlawful wage policies and practices that I have alleged in the Complaint in this action, including having gratuities and charges withheld from them, not being paid spread of hours compensation, and not being compensated for uniform purchase and maintenance expenses.

*Bouley*, No. 14 Civ. 7135, ECF No. 68, at 4.   In denying the motion, the Court explained "[p]laintiffs' materially identical affidavits offer general and conclusory allegations that are insufficient to satisfy even the low bar for conditional certification." *Id.*  The Court further noted that the plaintiffs provided no basis for their "personal knowledge" that other similar employees were subjected to alleged FLSA violations. *Id.*

Likewise, in *Hall v. Guardsmark, LLC*, Civil Action No. 11-213, 2012 WL 3580086, at *1 (W.D. Pa. Aug. 17, 2012), the plaintiffs, security guards, sought conditional certification for alleged violations of the FLSA overtime provisions maintaining the defendant, *inter alia*, required the plaintiffs to record only their official shift times, rather than time actually worked and that they were required to remain at their post after their shift ended "without being compensated for such time." *Id.*  In denying the motion the court highlighted that the named

plaintiffs failed to point to any other individuals who would join the proposed collective action because the only declarations they submitted were their own, which contained hearsay statements concerning what they believed about other employees and such declarations were contradicted by the defendant. *Id.* at *8-11.

Here, like in *Bouley* and *Hall*, Plaintiffs' allegations are conclusory and lack even the most basic level of specificity or detail required to support Plaintiffs' argument that they are similarly situated to the members of the Putative Collective with respect to any policy that violates the law. First, it is readily apparent that the Named Plaintiffs' declarations are virtually identical, cookie cutter, versions of each other. For example, each of the four Named Plaintiffs' declarations repeats what appears to be the same typographical error, that each of the four Named Plaintiffs shifts began at "7:30 *a.m.*" Racey Dec., at ¶ 5, McDonald Dec., at ¶ 6, Williams Dec., ¶ 6, Abreu Dec., ¶ 5 (emphasis added), despite the fact that each of the named Plaintiffs claim to have worked the night shift. Complaint, at ¶¶ 47, 51, 55 and 59. Additionally, a plain reading of the Named Plaintiffs' declarations demonstrates that they all contain similar, if not identical statements and conclusions, which only further supports the lack of credence they should be afforded in ruling on this motion.

Another significant issue concerning the Named Plaintiffs' declarations is that they are replete with general and conclusory statements. Specifically, the Named Plaintiffs each provide a list of alleged first names of individuals whom they claim they spoke with about Defendants' alleged failure to pay overtime. *See* Racey Dec., at ¶ 14; Abreu Dec., at ¶ 13; Williams Dec., at ¶13; McDonald Dec., at ¶15. However, conspicuously missing from their declarations are what the contents of their alleged discussions were concerning Defendants' alleged policy of failing to pay overtime including where and when these conversations took place, and which, if any, of the Defendants these individuals work or worked for.

Furthermore, all Named Plaintiffs baselessly conclude: "[l]ike me, [other floor men] typically worked more than forty (40) hours per week and were paid a flat per-shift rate that did not compensate them for post-shift work and did not include overtime premiums."  *See* Racey Dec., at ¶ 14; Abreu Dec., at ¶ 13; Williams Dec., at ¶13; McDonald Dec., at ¶15.  This wholly unsubstantiated, conclusory statement is insufficient to satisfy the standard for conditional certification of the Putative Collective.  In fact, three (3) of the floor men seemingly identified in the Named Plaintiffs' declarations (Samory Greene misidentified as "Sam" or "Samauri," Jean Theodore misidentified as "Gene," and James Atkinson identified as "Jimmy") submit declarations herewith contradicting Named Plaintiffs' conclusions that they were not compensated for "post-shift work" because they all confirm that their shift ended when club business concluded and not at 4:00 a.m. Theodore Dec., at ¶ 10; Atkinson Dec., at ¶ 7; Greene Dec., at ¶¶ 9, 10.

In addition, Named Plaintiffs' declarations are internally inconsistent, as well as inconsistent with the allegations set forth in the Complaint. For example:

- Plaintiff Racey in the Racey Dec. states that when he was first hired he was initially paid $150 per shift, which was then subsequently increased over time to $175 and $200 per shift, respectively.  However, according to the Complaint, Plaintiff Racey maintains that he was always paid $200 per shift.  Racey Dec., ¶ 8; Complaint, at ¶ 48.

- Plaintiff Racey also takes inconsistent positions in his own declaration where he states that "[t]hroughout [his] Employment Period . . . [he] was paid through a combination of check and cash," while later stating that "[t]hroughout [his] employment period, [he] was paid weekly via paycheck . . ." Racey Dec., ¶¶ 8, 10.

- Plaintiff Racey further contradicts himself by stating in his declaration that he worked for all three Defendants, but in the next paragraph he claims he rotated only between Flash and Private Eyes.  Racey Dec., ¶¶ 1, 2.

- Plaintiff Abreu after stating that he "typically worked at all three clubs each week," inconsistently states that he "typically worked at Flash Dancers and occasionally worked at New York Dolls and Private Eyes."  Abreu Dec., at ¶¶ 3, 7.  In addition, the Complaint repeats, contrary to Paragraph 3 of the Abreu Dec.,

9

that Mr. Abreu worked "primarily at Flash Dancers and occasionally at New York Dolls and Private Eyes."  Complaint, at ¶ 58.

• Plaintiff Abreu also stated in his declaration that he would pick up his paychecks from whichever manager was on duty "depending on which Club I was working in that week and who was managing at the time." Abreu Dec., at ¶ 10.  However, Mr. Abreu is not similarly situated to the other Named Plaintiffs in this regard in that the three other Named Plaintiffs stated that they would receive their paychecks from "Bob" or Barry Lipsitz, Jr. each week in an office above Flash. Racey Aff., at ¶ 10, Williams Aff., at ¶ 10, McDonald Aff., at ¶ 11.

Moreover, Plaintiffs cannot rely on the cursory allegations contained in their Complaint to support their Motion. *See, e.g. Boutros v. JTC Painting and Decorating Corp.*, No. 12 Civ. 7576 (PAE), 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2013).[4]

Not only have Plaintiffs' failed to satisfy their burden, their conclusory and baseless statements are entirely contradicted by some of the very own floor men they worked with, as well as the managers of each of the respective clubs.  According to Jean Theodore, who has been a floor man at Flash and NY Dolls for roughly twenty years, the night shift begins at 8:00 p.m., and generally business is concluded by no later than 5:00 a.m., at both of those locations. Theodore Dec., at ¶¶ 1, 10-11, 15-16; *compare* Racey Dec., ¶ 5, McDonald Dec., ¶ 5, Williams Dec., ¶ 6,  Abreu Dec., ¶ 5.  While working a shift, Mr. Theodore always takes a meal break, as well as extra breaks to have a snack or rest.  *Id.* at ¶¶ 22-23; *compare* Racey Dec., ¶ 5, McDonald Dec., ¶ 6, Williams Dec., ¶ 6,  Abreu Dec., ¶ 5.  This was confirmed by floor men James Atkinson and Samory Greene, who each work at Flash.  Mr. Atkinson and Mr. Greene both maintain that a night shift does not start at 7:30 p.m., that the latest they leave Flash after a shift is 5:00 a.m. and that floor men take meal breaks. Atkinson Dec., at ¶¶ 6, 11-12, 13; Greene Dec., at ¶¶ 6-7, 11, 17 – 20.

---

[4]     As Plaintiffs' factual allegations submitted in support of their motion are insufficient, Plaintiffs may not, on reply, submit any further declarations.  *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, No. 07-CV-2352 (HB), 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007) ("[I]t is established beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply.") (internal citations omitted); *see also Burroughs v. Cty. of Nassau*, No. 13-cv-6784 (JS) (WDW), 2014 WL 2587580, at *4 (E.D.N.Y. June 9, 2014) (overruling plaintiffs' objection to decision to disregard new evidence submitted in reply).

Lastly, Sean Hennigan, a manager at NY Dolls for the past twenty-one years, states that the night shift for floor men starts at 8:00 p.m., and that they generally leave at 4:00 a.m., although about once every other month they may stay until 4:30 a.m.  Hennigan Dec., at ¶¶ 9-10. In fact, in all of the years Mr. Hennigan has worked at NY Dolls he cannot recall one instance when floor men stayed at NY Dolls until 5:00 a.m.  *Id.* at ¶ 11.  Further, and contrary to Plaintiffs' allegations, Amir Khan, a manager at Private Eyes for approximately seventeen (17) years, stated that night shift floor men do not start working until 8:00 p.m. and are usually done before 5:00 a.m.  Khan Dec., at ¶¶ 10-11.  Robert Klotsche, a manager at Flash since 2007, maintains that night shift floor men do not begin working until 8:00 p.m. and business normally concludes at 5:00 a.m. or earlier.  Klotsche Dec., at ¶¶ 6, 18-19.  While McDonald, Williams and Abreu claim that they worked until 6:00 a.m., "and sometimes later," floor men Greene and Atkinson, as well as managers of Flash, NY Dolls and Private Eyes each state that in all of their years at each of the respective clubs they have ***never*** been on premises as late as 6:00 a.m. Greene Dec., ¶ 15, Atkinson Dec., ¶ 12, Klotsche Dec., ¶ 9, Khan Dec., ¶ 12, Hennigan Dec., ¶ 11.  All floor men working at Flash took, at least one meal break during their shift, and take additional shorter breaks throughout the night as needed.  *Id.* at ¶ 20.

Moreover, despite Named Plaintiff Williams' allegations that he began his shift at 7:30 p.m., Flash manager Klotsche stated that Williams was habitually late, never arrived before 8:15 p.m. for the 8:00 p.m. shift, would arrive as late as 9:15 p.m. and was ultimately fired for being late after many conversations and warnings from Flash management. Complaint, ¶ 55, Klotsche Dec. at ¶ 20.  In fact, of the six (6) pages of text messages produced by Williams in the limited discovery to date, Williams acknowledges being late four (4) times. *See* Kimmel Decl. ¶ 7, Exhibit F.

Plaintiffs voluntarily chose to seek conditional certification prior to any discovery in this

action.  As a result, not only are the declarations of plaintiffs Racey, McDonald, Williams and Abreu based on conjecture and unfounded conclusions, they also do not adequately demonstrate that Named Plaintiffs are similarly situated to other floor men for which they seek conditional certification.  Thus, this utter absence of evidence alone warrants denial of Plaintiffs' motion.

### 3.  A Collective Action Is Inappropriate Because Potential Members of the Putative Collective Are Bound By Arbitration Agreements

Notwithstanding the above, this Court should also deny conditional certification of the Putative Collective because many potential opt-in plaintiffs have entered into binding arbitration agreements that preclude them from pursuing their claims in federal court.

Indeed, resolving Plaintiffs' FLSA overtime claims would require the Court to engage in plaintiff-by-plaintiff, and defendant-by-defendant, fact specific inquiries.  Courts have denied notice and collective action certification when adjudicating putative plaintiffs' claims would require a court to engage in individualized inquiry.  *See Diaz*, 2005 WL 2654270, at *5 (denying plaintiffs' motion for certification of plaintiffs' off-the-clock claims as they were "too individualized to warrant collective action treatment."); *see Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 173 (W.D.N.Y. 2007) (denying plaintiffs' motion for conditional certification of off-the-clock and overtime claims); *see also Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003).

For example, in *Krstic v. J.R. Contracting & Envtl. Consulting,* No. 09-cv-2459 (PGS), 2010 WL 395953, at *3 (D.N.J. Feb. 4, 2010), the court denied a motion for conditional certification explaining that the nature of the case could be affected by certain arbitration agreements that were at issue.  As that court explained, it was "unclear as to whether it ha[d] subject matter jurisdiction over all plaintiffs in this action, if arbitration is appropriate." *Id.*  The court went on to explain that "[t]o consider Plaintiffs' motion for conditional certification the issue of subject matter jurisdiction must be resolved." *Id.*; *see*

*also Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 81 (D.N.J. 2014) ("Plaintiffs have not made a sufficient factual showing that installers who have signed mandatory arbitration or class action waiver agreements are similarly situated because [plaintiffs] have not signed any such agreement.").

Here, a significant number of floor men have signed arbitration agreements which cover the claims that are the subject of this Putative Collective, and provide for class action waivers. For example, included as Exhibit A to the Klotsche Dec. are two sample arbitration agreements for floor men who worked at Flash, James Atkinson and Samory Greene, each dated August 6, 2015. Klotsche Dec., at ¶¶ 23, 24, Exhibit A. These signed arbitration agreements are a complete bar to such employees' participation in this action. The mandatory arbitration agreements signed by many of the potential opt-in members provide an effective and efficient mechanism for relief. Consequently, because many of the potential members of the Putative Collective are subject to binding arbitration, like Mr. Atkinson and Mr. Greene, they are not similarly situated to those plaintiffs who are not, and as a result, Plaintiffs' conditional certification motion should be denied on this ground as well.

### 4. The Court Should Not Permit That Notice Be Sent to Those Who Have Signed Arbitration Agreements

Insofar as the Court should decide to send notice of this case to anyone, the Court should not send notice to those individuals who are parties to arbitration agreements covering the FLSA overtime claim, which is the subject of this conditional certification motion. To do so would be outside the Court's jurisdiction, and contrary to the mandate of the Federal Arbitration Act ("FAA").

Many courts have refused to permit notice to be sent to putative collective members who have signed arbitration agreements. *See Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 655 (S.D. Fla. 2008) (denying class treatment because determining the validity of provisions of the

purported plaintiffs' agreements was necessarily individualized); *see also Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 319 (S.D.N.Y. 2003); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 862 (D. Md. 2013) (excluding class members subject to arbitration agreements "that expressly foreclose their ability to proceed in this case"); *Pablo v. ServiceMaster Glob. Holdings Inc.*, No. C 08–03894 SI, 2011 WL 3476473, at *3 (N.D. Cal. Aug. 9, 2011) (class action not sustainable where litigation would be devoted to determining which portion of putative class signed arbitration agreements).

What is more, the sending of notice is a discretionary case management tool for the "efficient resolution in one proceeding of common issues of law and fact" *Hoffman-LaRoche*, 493 U.S. at 170, but nothing under *Hoffmann-LaRoche* gives the Court the power to send notice of court litigation to individuals who have contractually agreed not to join the case, or to invite the filing of claims that would need to be litigated individually in a different forum.  Inviting the filing of claims that are required to be filed individually in another forum is completely divorced from the Court's discretionary authority to manage this case, and would be contrary to the FAA and concepts of judicial efficiency and fundamental fairness.  *See Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated.").

Accordingly, should the Court conditionally certify the Putative Collective, this Court should exclude all individuals who are subject to binding arbitration agreements as those individuals are precluded from opting into the collective.

## II. THE COURT SHOULD DENY CONDITIONAL CERTIFICATION BECAUSE PLAINTIFFS CANNOT ESTABLISH A COMMON POLICY IN VIOLATION OF LAW

### A. Floor Men Are Exempt From Federal Overtime Requirements

Conditional certification is not proper where a defendant demonstrates "it will likely succeed at trial in proving that the employees are not entitled under the FLSA [or the NYLL] to overtime compensation." *Amendola*, 558 F. Supp. 2d at 467. In those instances, "a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice." *Id.*

The FLSA recognizes an exemption for individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see also* 12 NYCRR § 146-3.2(c)(1) ("Employee also does not include any individual permitted to work in [a]n executive, administrative or professional capacity"). Moreover, there is no requirement that the exempt employee work in an office and this exemption is frequently applied to employees even if they perform nonexempt work. *See, e.g.*, *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982); *Donovan v. Burger King Corp.*, 672 F. 2d 221, 226-28 (1st Cir. 1982).

Under the FLSA, an individual is employed in a bona fide executive capacity when: (1) he is compensated on a salary basis at a rate of not less than $455 per week; (2) his primary duty is management of the enterprise or of a customarily recognized department or subdivision thereof; (3) he customarily and regularly directs the work of two or more other employees; and (4) he has the authority to hire or fire other employees *or* his suggestions and recommendations as to the hiring, firing, advancement, or any other change of status of other employees is given particular weight. 29 C.F.R. § 541.100(a).

It is clear that Plaintiffs meet the requirements to qualify as exempt under the FLSA.

Initially, the Named Plaintiffs' compensation well exceeds the threshold limit. *See* Racey Dec., at ¶¶ 7-8; Abreu Dec., at ¶¶ 5, 8; Williams Dec., at ¶¶ 6-8; McDonald Dec., at ¶¶ 8-9.

Plaintiffs' duties as floor men involve substantial managerial work, including, but not limited to, interacting with customers, ensuring that customers are satisfactorily taken care of, assigning and directing wait staff, as well as overseeing and undertaking security. Theodore Dec., at ¶ 5; Atkinson Dec., at ¶ 3; Greene Dec., at ¶ 3; Hennigan Dec., at ¶ 12; Khan Dec., at ¶ 7; Klotsche Dec., at ¶ 10. Plaintiffs regularly exercise discretionary powers in the discharge of their duties as floor men.

Plaintiffs "customarily and regularly" directed the work of two or more employees in the performance of their duties. Pursuant to the regulations promulgated by the Department of Labor, "[t]he phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant" and "includes work normally and recurrently performed every workweek." 29 C.F.R. § 541.701. In this instance, Plaintiffs routinely directed the work of wait staff at Defendants' respective clubs, which was a significant aspect of their managerial functions. Theodore Dec., at ¶ 5; Atkinson Dec., at ¶ 3; Greene Dec., at ¶ 3. Moreover, Plaintiffs' recommendations with respect to personnel were given particular weight, especially in light of their direct supervisory and managerial responsibilities.

At Flash, floor men also participate in interviewing and making recommendations regarding hiring and firing wait staff and other floor men which is weighed heavily by management when make a decision. Klotsche Dec., at ¶ 10.

Accordingly, Plaintiffs' management functions exempt them from overtime under the FLSA's executive exemption, and therefore, this Court should not conditionally certify the Putative Collective, or at the very least, this Court should require further discovery on this issue before deciding whether conditional certification is warranted.

**B. Plaintiffs' Claims Of Joint Employment Are Conclusory And Without Merit And There Can Be No Violation Without Aggregating Shifts Across The Three Independently Owned and Operated Clubs**

Plaintiffs argue that Defendants constitute a common enterprise and act as joint employers of Plaintiffs and members of the Putative Collective. However, the mere fact that Plaintiffs have alleged that Defendants are joint employers (which they are not) does not absolve Plaintiffs of their burden of showing that Defendants maintained a common scheme or policy before conditional certification can be granted. In assessing the applicability of the integrated enterprise doctrine, this Court should consider whether the entities shared interrelated operations, common management, centralized control of labor relations and common ownership. *See Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 509 (S.D.N.Y. 2013). While no single factor is dispositive, "control of labor relations is the central concern." *Id.* at 510 (citations omitted).

In typical conclusory fashion, Plaintiffs maintain that Defendants "operate together as a single integrated business enterprise with shared ownership, management, employees, policies, and employment practices." Complaint, at ¶ 41. Plaintiffs also rely upon the fact that each of Defendants' clubs websites allegedly provides certain information pertaining to the other clubs, as well as a web link to the other clubs. *Id.* at ¶ 44. Furthermore, each of the Named Defendants' declarations contains the exact conclusory statement without a shred of proof: "[i]t is my understanding that the three clubs . . . are operated together by the same owners, management and with the same policies." *See* Racey Dec., at ¶ 2; Abreu Dec., at ¶ 2; Williams Dec., at ¶ 2; McDonald Dec., at ¶ 2.

Yet, all of these patently conclusory statements are entirely contradicted and disproved by Defendants. Here, each of the Defendants is a separate and wholly distinct entity, and is operated and controlled solely by the managers at each respective club. Mr. Hennigan, as the

manager of NY Dolls for the past twenty-two years, states that he along with other managers at NY Dolls are exclusively in charge of scheduling NY Dolls' employees, overseeing its staff and customer conduct, and ordering any goods, including liquor.  Hennigan Dec., at ¶ 3-4.  In fact, at no time do managers at Flash or Private Eyes have any oversight or responsibilities with regards to NY Dolls' operations.  *Id.*  at 5.  Mr. Khan, the manager of Private Eyes for roughly seventeen years, also states that he and his other managers operate and control Private Eyes, without any oversight or assistance from the other club defendants.  Khan Dec., at ¶¶ 3-4.

Moreover, each of the Named Plaintiffs concedes that they received separate checks from each of the Defendants' clubs for shifts they worked during a particular week.  *See* Racey Dec., at ¶ 10; Abreu Dec., at ¶ 10; Williams Dec., at ¶10; McDonald Dec., at ¶11.  Furthermore, the Named Plaintiffs also each state: "I am aware that the Defendants' floor men and security employees were typically transferred among the three clubs." Racey Dec., ¶ 3, McDonald Dec., ¶ 3, Williams Dec., ¶ 4, Abreu Dec., ¶ 3.  However, there is absolutely no factual basis or proof whatsoever to support this.

It is abundantly clear that Plaintiffs have failed to establish that the Defendants are an integrated enterprise of joint employers that maintained a common scheme or policy in violation of law.  For example, in *Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009), the plaintiffs, delivery employees, sued six corporations that operated and managed six Thai restaurants, alleging that the defendants were joint employers under the FLSA.  *Id.*  According to the complaint, defendants maintained a common policy of requiring plaintiffs to work over forty hours per week without providing minimum wage and overtime compensation.  *Id.* at *3.   Although Plaintiffs' affidavits showed that the restaurant-defendants followed similar policies with regard to compensation, they did not make the necessary showing that the actions were a reflection of a common policy, maintained by all defendants, in violation

of the FLSA. *Id*. at *7. The court indicated that "[s]ome evidence of such a common policy to violate the law is particularly significant in this case given that Defendant Restaurants are six distinct New York corporations and that defendants dispute plaintiffs' characterization of defendants as a joint employer under the FLSA." *Id*. at *8.

Moreover, in *Guaman v. 5 "M" Corp.*, No. 13 Civ. 03820 (LGS), 2013 WL 5745905, at *1 (S.D.N.Y. Oct. 23, 2013), the plaintiff sought conditional FLSA collective certification as against two individuals and four corporate defendants maintaining that they shared common ownership and management in the control and operation of four restaurants. *Id.* In denying the motion as to three of the four corporate defendants, the Court held the plaintiff failed to offer sufficient evidence that the employees of those three defendant-restaurants were subjected to the same unlawful policy. *Id*. at *3. In so holding, the Court stated that the plaintiff's reliance on his own declaration that "all four restaurants followed the same wage and hour policies" were based solely on conversations with two other employees, and the defendants' website, Youtube channel, a newspaper article and licensing information to show common management was not sufficient. The Court indicated that the plaintiff failed to corroborate that violations of the FLSA occurred at all of the defendants' restaurants, which was supported by the fact that the Court took into account the affidavits from the four general managers at the defendants' restaurants each stating that their respective restaurants did not coordinate payments of employees. *Id.*; *see also Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (denying motion for conditional certification of FLSA collective in part holding, "[a]lthough all Pret stores in New York City are owned by the same parent company, plaintiffs have not demonstrated across all locations a uniform policy of failure to pay overtime compensation."). Similarly, here, Defendants' status as joint employers under the FLSA is disputed, and Plaintiffs have failed to provide evidence of a common policy to violate the law.

More importantly, Plaintiffs fail to allege that others in the proposed collective are also jointly employed by Defendants to show they are "similarly situated." *See Levinson*, 2003 WL 22533428, at *1.   In *Levinson*, the court explained, "[w]hile plaintiffs have provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates, they have failed to make a sufficient showing that the same was true for other potential plaintiffs."   *Id.*   (emphasis in original).

Here, while Named Plaintiffs each provide a list of first names of individuals whom they claim they spoke with about Defendants alleged policy of failing to pay overtime, what the contents of their alleged discussions were concerning Defendants' common policy of failing to pay overtime including where and when these conversations took place, and which, if any, of the Defendants these individuals work or worked for.   *See* Racey Dec., at ¶ 14; Abreu Dec., at ¶ 13; Williams Dec., at ¶13; McDonald Dec., at ¶15.

### C.   PLAINTIFFS' PROPOSED FORM OF NOTICE IS IMPROPER

While it is Defendants' position that this motion must be denied, and no notice should issue, the fact is that Plaintiffs' version of the court authorized Notice (the "Notice"), a copy of which is attached to the Pelton Declaration as Exhibit F (Dkt No. 31-6), is defective and therefore should be modified by this Court.   Defendants have annexed their counter proposed form of Notice as Exhibit A to the Kimmel Decl., as well as a redlined version showing Defendants' proposed modifications to Plaintiffs' version of the Notice as Exhibit B to the Kimmel Decl.   Defendants proposed Notice contains the elements that courts of this Circuit have approved.

It is well-settled that "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed.   This procedure may avoid the need to cancel

consents obtained in an improper manner." *Hoffmann-La Roche, Inc.*, 493 U.S. 172.  Indeed, "court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* Courts have held that "the form and content of the notice . . . is to be approved by the Court prior to mailing in order that present and after-the-fact disputes between counsel as to form and manner of consent may be eliminated." *Krueger v. New York Tel. Co.*, No. 93 CIV. 0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-LaRoche*, 493 U.S. at 170).

### 1.  Plaintiffs' Proposed Notice Is Not Neutral

To conform to the requirement of judicial impartiality articulated in *Hoffman La-Roche*, "the notice should set out a neutral statement of the claims and the [defendants'] answer, without any indication of the future outcome in the case." *Gayle v. United States*, 85 Fed. Cl. 72, 81 (2008). In this regard, Plaintiffs' Notice must be modified in several respects.  First, to ensure neutrality, wherever the Notice contains a description of the claims in the lawsuit, Defendants have made it clear that Defendants deny the claims and that they maintain defenses which will defeat the claims. *See, e.g.*, *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 239 (N.D.N.Y. 2002) (holding that the notice should contain a statement of defendant's position on the case).[5]

Moreover, Plaintiffs' Notice should be modified to identify the Defendants' attorneys on the notice form and not only the Plaintiffs' attorneys.  An individual who receives the Notice should be able to decide for him or herself whether he/she wants to direct questions concerning the lawsuit to Plaintiffs' counsel or Defendants' counsel. *See Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (holding that courts

---

[5]     Moreover, where certain language used by Plaintiffs in various places throughout the Notice was not neutral, Defendants have proposed more neutral language. Defendants' proposed form of Notice also provides that the putative collective members must have worked at most three (3) years prior to the date of notice in order to receive notice due to the two (2) year statute of limitations which may be extended to three (3) years if Plaintiffs can establish a willful violation, which they cannot.

routinely require that counsel for both parties be listed on the notice form); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 91, 99 (S.D.N.Y 2003) (approving a form of notice which identified the defendants' counsel); *Velasquez v. Digital Page, Inc*., No. CV 11–3892(LDW)(AKT), 2014 WL 2048425 (E.D.N.Y May 19, 2014).

In addition, Plaintiffs' Notice should be modified to provide that any potential opt-in plaintiffs send their consent forms to the Clerk of the Court and not to Plaintiffs' counsel.  Courts in this Circuit as well as in other circuits routinely require that consent forms be sent to the Clerk of the Court, holding that language directing potential class members to Plaintiffs' counsel for further information improperly discourages "[class members] from seeking outside counsel." *See Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785(KTD), 2008 WL 465112, at * 4 (S.D.N.Y. Feb. 19, 2008); *Velasquez*, 2014 WL 2048425, at *14; *Guzman*, 2007 WL 2994278, at *9 (finding that sending forms to plaintiff's counsel "inappropriately discourages employees from seeking outside counsel" and ordering that the notice direct recipients to submit their consent forms to the Clerk of the Court, not to the plaintiffs' attorneys); *see also Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 84 (E.D.N.Y. 2008) (…"[R]ecent decisions have held that such a provision improperly discourages class members from seeking outside counsel and thus, courts have directed that Consent Forms be sent to the Clerk of the Court.").

### 2.  Plaintiffs' Proposed Notice is Misleading

In addition to the fact that Plaintiffs' Notice lacks neutrality, Plaintiffs' Notice is also misleading to a potential opt-in plaintiff in several respects. First, Plaintiffs' Notice does not plainly state that it is not intended to imply that the recipient of such notice would be entitled to monetary recovery.  In this regard, courts in this Circuit have permitted the inclusion of language that states "this notice does not mean that you are entitled to any monetary recovery.  Any such determination must still be made by the Court." *See Mazur v. Olek Lejbzon & Co.*, No. 05 Civ.

2194(RMB) DF, 2005 WL 3240472, at *6 (S.D.N.Y. Nov. 30, 2005) (upholding such language in Notice and including it in the section entitled "Your Right to Participate in this Suit"). *Id*.

Plaintiffs' Notice also fails to fully and accurately describe the effect of joining this case on a potential opt-in plaintiff. Plaintiffs' Notice is not completely clear about the opt-in plaintiffs' responsibilities upon joining the lawsuit. Thus, Defendants also propose that the Notice state that an individual who opts in to this suit may be asked to (1) respond to certain questions; (2) sit for depositions; (3) pay costs if they do not prevail. *See Hallissey*, 2008 WL 465112, at *4 (holding that including such information on notice is appropriate); *Bah v. Shoe Mania, Inc.*, No. 08 Civ. 9380(LTS)(AJP), 2009 WL 1357223 (S.D.N.Y. May 13, 2009); *Slamna v. API Rest. Corp.*, No. 12 Civ. 757(RWS), 2013 WL 3340290 (S.D.N.Y. July 2, 2013).[6]

### 3. Plaintiffs' Request For Telephone Numbers and Email Addresses Should Also Be Rejected as Improper

Plaintiffs' request for telephone numbers and email addresses of putative collective action members should also be rejected. Privacy concerns militate against disclosure of this information. *See, e.g.*, N.Y. Lab. Law § 203-d ("[a]n employer shall not unless otherwise required by law: [c]ommunicate an employee's [telephone number or personal electronic mail address] to the general public."); *see Gordon v. Kaleida Health*, No. 08–CV–378S, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009). Rather, production of telephone numbers and email addresses should be considered only if Plaintiffs demonstrate that less intrusive contact information (i.e., name and address) is insufficient to locate potential collective action members. Because Plaintiffs have failed to do this, the request for telephone numbers and email addresses should be denied.

---

[6]    Defendants' proposed Notice informs the putative collective that they may be barred from participating if they have entered into an agreement with defendants containing an arbitration clause and/or class action waiver. *See* Kimmel Decl., Exhibit A at Section III. Moreover, Defendants' counter proposed Consent to Join form and redline of Plaintiffs' Consent to Join form showing Defendants' proposed modifications are annexed to the Kimmel Decl. as Exhibits C and D.

As such, should this Court grant Plaintiffs' motion for conditional certification and authorize notice, the Court should direct the production of only the names and last known addresses of employees for the relative period.[7]  Moreover, in that event, this information should be provided to Plaintiffs under an obligation of confidentiality and *solely* to be used for the purpose of sending notice of the pendency of this action and not any other form of solicitation or contact.

## D. FIRST CLASS MAIL IS THE BEST MEANS OF DISTRIBUTING THE NOTICE AND CONSENT, AND THEREFORE POSTING IS NOT WARRANTED AT DEFENDANTS' RESPECTIVE PLACES OF BUSINESS

Plaintiffs also request an order directing Defendants to post the Notice and Consent, in a place where potential plaintiffs are likely to view it, *i.e.*, within the Defendants' respective places of business.  Defendants submit that such posting is unnecessary.  Defendants have not yet produced employee contact information and there is no reason, at this juncture, to assume that production will not be complete and accurate.  Moreover, the only group that will be reached by posting are *current* floor men at the subject locations, all of whom have arbitration agreements and have an interest in providing their employer with an up-to-date mailing address. *See e.g.*, *Gordon*, *supra*, at * 11 (denying plaintiffs request  to post notice at place of employment); *Russell v. Wells Fargo & Co.*, No. C 07-3993, 2008 WL 4104212, at *5 (N.D. Cal. 2008) ("defendant, however, is unlikely to have obsolete contact information for its current employees").

---

[7]     Here, Plaintiffs contend that they are entitled to such discovery but have not established that the employees are similarly situated.  Thus, to the extent Plaintiffs' motion is denied, Defendants should not be required to turn over the names, addresses, etc. of employees.  Where a plaintiff brings an action pursuant to the FLSA, and seeks the names and addresses of employees in the absence of a conditionally certified collective action, courts have denied such discovery. *See Prizmic*, 2006 WL 1662614; *see also Crawford v. Dothan City Bd. Of Educ.*, 214 F.R.D. 694 (M.D. Ala. 2003) (denying such discovery as premature and holding that this approach comported with the two step process of resolving requests for conditional certification by first making a determination of whether individuals are similarly situated based on pleadings and affidavits and if so certifying the action and then permitting the defendant to move to decertify based on evidence obtained through discovery); *Brooks v. BellSouth Telecomm., Inc.*, 164 F.R.D. 561, 571 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997).

Additionally, physically posting the Notice and Consent is meaningless for former employees because of just that – they are former employees and will not see anything posted in the workplace.  Thus, for this group posting accomplishes nothing and the *only* reasonable way to reach them is by first class mail.  Accordingly, Plaintiffs' request to post the Notice and Consent at Defendants' respective place of business should be denied as there is absolutely no basis to believe that any of the putative collective members will not receive the Notice and Consent via first class mail.

### E.  PLAINTIFFS' PROPOSED "REMINDER" NOTICE IS UNNECESSARY

Plaintiffs submit a proposed "reminder" to be sent to collective action members who do not opt- in prior to the expiration of the opt-in deadline.  However, Plaintiffs articulate no reason and make no showing that such a reminder is necessary here. *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (finding that plaintiffs did not identify any reason why a reminder notice was necessary, and therefore, denied such a request).  This Court should deny the request for the distribution of a proposed reminder notice as unnecessary, as it will only serve to badger individuals who are not a part of this litigation and likely be interpreted as encouragement by the Court to join this lawsuit.

## **CONCLUSION**

For all the reasons set forth above, and in the accompanying Declaration of Jeffrey A. Kimmel, Esq., Robert Klotsche, Sean Hennigan, Amir Khan, Jean Theodore, James Atkinson and Samory Greene, and exhibits annexed thereto, the Court should deny Plaintiffs' Motion in its entirety.

Dated: New York, New York
      April 4, 2016

MEISTER SEELIG & FEIN LLP

/s/ Jeffrey A. Kimmel
By: Jeffrey A. Kimmel
     Howard Davis
     Paul Rutigliano
125 Park Avenue
New York, New York 10017
212-655-3500
*Attorneys for Defendants*