USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  May 23, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                      :

MARTIN RACEY, *Individually and on Behalf* :
*of All Others Similarly Situated, et al.,*      :
                                      :

                         Plaintiffs,    :         15 Civ. 8228 (KPF)
                                      :

                   v.                :        OPINION AND ORDER
                                      :

JAY-JAY CABARET, INC., *et al.,*        :
                                      :

                       Defendants. :
                                      :

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

      Plaintiffs Martin Racey, Kevin McDonald, Gary Williams, and Alex Abreu (collectively, "Plaintiffs") bring this action against Jay-Jay Cabaret Inc. d/b/a Flash Dancers, AAM Holding Corp. d/b/a Private Eyes, and 59 Murray Enterprises, Inc. d/b/a New York Dolls, along with their owners or managers, Barry I. Lipsitz and Barry Lipsitz, Jr. (collectively, "Defendants"), asserting claims under the Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (the "FLSA") (codified as amended at 29 U.S.C. §§ 201-219), and the New York Labor Law, Consol. Laws 1909, ch. 31 (the "NYLL"), for alleged failure to pay appropriate overtime compensation and for violations of the notice and wage statement requirements of the NYLL.  Plaintiffs seek an order conditionally certifying a collective action under the FLSA and authorizing Plaintiffs to send notice to prospective collective action members.  For the reasons set forth in this Opinion, the motion for conditional certification is

granted, and the Court will authorize Plaintiffs' proposed notice forms, with modifications noted below.

**BACKGROUND**[1]

**A.    Factual Background**

According to Plaintiffs, Defendants operate three "gentleman's clubs" located in Manhattan under the names Flash Dancers, Private Eyes, and New York Dolls.  (Compl. ¶¶ 1, 12-17).  Plaintiffs are former employees whose primary responsibilities were as "floor men,"[2] and who were paid on a per-shift basis of eight hours per shift, but who allege that they routinely worked in excess of 40 hours per week without being compensated at the required time-and-a-half rate for the excess hours.  (Compl. ¶ 1; Racey Decl. ¶¶ 1, 5, 8; McDonald Decl. ¶¶ 1, 5, 9; Williams Decl. ¶¶ 1, 6, 8; Abreu Decl. ¶¶ 1, 5, 8).  Each Plaintiff worked at all three Defendant clubs.  (Racey Decl. ¶ 1; McDonald Decl. ¶ 1; Williams Decl. ¶ 1; Abreu Decl. ¶ 1).

As floor men, Plaintiffs' duties included seating customers, selling bottle service (i.e., bottles of alcohol) to customers, assisting the doormen, making sure dancers had transportation home, and providing general security and

---

[1]    The facts in this Opinion are drawn from Plaintiffs' Complaint ("Compl." (Dkt. #1)), as well as from the declarations and exhibits thereto submitted in support of ("Pelton Aff." (Dkt. #31)) and in opposition to ("Kimmel Decl." (Dkt. #35)) the instant motion. Plaintiffs' declarations, submitted as exhibits to the Pelton Affidavit, are referred to as "[Name] Decl."  For convenience, the parties' briefs are referred to as "Pl. Br." (Dkt. #30), "Def. Opp." (Dkt. #34), and "Pl. Reply" (Dkt. #45).

[2]    In their Reply papers, Plaintiffs state that they defined the proposed collective as "floor men and security employees" because Plaintiffs worked as both, and they further indicate that they agree not to include individuals employed exclusively in a security capacity.  (Pl. Reply 1 n.1).  For simplicity, the Court will refer only to "floor men," with the understanding that such individuals might have acted in a security role at times.

protection.  (Racey Decl. ¶ 4; McDonald Decl. ¶ 4; Williams Decl. ¶ 5; Abreu Decl. ¶ 4).  Plaintiffs allege that, while their shifts technically spanned from 7:30 p.m. until 4:00 a.m., they were required to stay at the club until all other employees (and patrons) had left, which typically was until 4:45 to 5:30 a.m., and at times even later.  (Racey Decl. ¶¶ 4-6; McDonald Decl. ¶¶ 4-5, 7; Williams Decl. ¶¶ 5-7; Abreu Decl. ¶¶ 4-6).[3]  Each Plaintiff alleges he worked in excess of 40 hours per week, without receipt of overtime pay.  (Racey Decl. ¶ 5 (47-60 hours); McDonald Decl. ¶ 5 (46-53 hours); Williams Decl. ¶ 6 (46-53 hours); Abreu Decl. ¶ 5 (47-62 hours)).

Plaintiffs claim that Defendants "operate[] together as a single integrated business enterprise utilizing the same business practices and policies," and that their "operations are interrelated and unified."  (Compl. ¶¶ 19, 22).  Specifically, Plaintiffs allege that the clubs are operated by the same owners (Barry I. Lipsitz and Barry Lipsitz, Jr.) and management, and that they follow the same policies.  (Racey Decl. ¶ 2; McDonald Decl. ¶ 2; Williams Decl. ¶ 2; Abreu Decl. ¶ 2).  Each Plaintiff indicates that he worked at all three clubs and understood that floor men generally rotated among all locations, but that his duties, schedule, and compensation were the same across all locations.  (Racey Decl. ¶¶ 1-3; McDonald Decl. ¶¶ 1-3; Williams Decl. ¶¶ 1-4; Abreu Decl. ¶¶ 1-3).

---

[3]     Plaintiffs' Declarations each state that their shifts began at 7:30 a.m.  Given that the Complaint recites a 7:30 p.m. start time (*see* Compl. ¶¶ 47, 51, 55, 59), the Court understands this to be a typographical error in the Declarations.

In addition to the unpaid overtime allegations, Plaintiffs further claim that Defendants failed to provide or post certain notices or statements that are required under state law.  (Compl. ¶ 2; Racey Decl. ¶¶ 9-10, 12; McDonald Decl. ¶¶ 10-11, 13; Williams Decl. ¶¶ 9-11; Abreu Decl. ¶¶ 9-11).

Finally, each Plaintiff alleges that he knows of several similarly situated persons employed as floor men who were subject to the same practices.  (Racey Decl. ¶ 14; McDonald Decl. ¶ 15; Williams Decl. ¶ 13; Abreu Decl. ¶ 13).

## B.    Procedural Background

Plaintiffs commenced this action alleging violations of federal and state labor law on October 19, 2015.  (Dkt. #1).  Specifically, Plaintiffs bring claims for violation of the overtime wage provisions of the FLSA, 29 U.S.C. § 207(a)(1), and the NYLL's associated regulations; and failure to provide wage notices and wage statements as required by the NYLL, N.Y. Lab. Law § 195.

On February 22, 2016, Plaintiffs filed a motion for the Court to conditionally certify the FLSA collective action and allow notice to current and former floor men of Flash Dancers, Private Eyes, and New York Dolls.  (Dkt. #29-31).  Defendants opposed the motion on April 4, 2016 (Dkt. #34-41), and Plaintiffs filed a reply brief on April 19, 2016 (Dkt. #45), concluding briefing on the motion.

## DISCUSSION

### A.   The Court Will Preliminarily Certify a Collective Action Under the FLSA

#### 1.    Applicable Law

Section 216(b) of the FLSA authorizes collective actions to recover damages for unpaid wages where all employees are "similarly situated."  29 U.S.C. § 216(b).  "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'"  *Mark* v. *Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

"When deciding whether to certify a class under 29 U.S.C. § 216(b), district courts in the Second Circuit apply a two-step process."  *Ruiz* v. *Citibank, N.A.*, 93 F. Supp. 3d 279, 297 (S.D.N.Y. 2015) (quoting *Morano* v. *Intercontinental Capital Grp., Inc.*, No. 10 Civ. 2192 (KBF), 2012 WL 2952893, at *4 (S.D.N.Y. July 17, 2012)), *reconsideration denied*, 2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015).

At the first step, generally termed conditional certification, a plaintiff bears the burden of demonstrating that he is "similarly situated" to other members of the proposed collective action.  *See Morales* v. *Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006).  This requires "only a 'modest factual showing' that the plaintiff and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the

law.'" *Morano*, 2012 WL 2952893, at *5 (quoting *Hoffman* v. *Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  Upon such a showing, plaintiffs may send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555.

Courts within this District have noted that, at the first step, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  *Winfield* v. *Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) (quoting *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)).  The modest factual showing can be made by "relying on [plaintiffs'] own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."  *Hallissey* v. *Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); *Anglada* v. *Linens 'N Things, Inc.*, No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007).  Indeed, a FLSA collective action may be conditionally certified even upon a single plaintiff's affidavit.  *See, e.g.*, *Bhumithanarn* v. *22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015); *Gonzalez* v. *Scalinatella, Inc.*, No. 13 Civ. 3629 (PKC), 2013 WL 6171311, at *3 (S.D.N.Y. Nov. 25, 2013); *Hernandez* v. *Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3-4 (S.D.N.Y. June 25, 2013) (granting conditional certification and collecting cases).

The second step of collective active certification occurs after notice is sent, the opt-in period concludes, and discovery closes.  Involving a "more stringent factual determination," *Lynch* v. *United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007), the second stage requires the court, "on a fuller record, [to] determine whether a [collective action] may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Myers*, 624 F.3d at 555.  If the opt-in plaintiffs are revealed not to be similarly situated, the class "may be 'de-certified'" and "opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

### 2.    Analysis

Plaintiffs have cleared the low bar for conditional certification under the facts of this case, as the evidence exceeds that which is necessary to meet the low "similarly situated" bar.  Defendants offer a number of challenges to conditional certification, including claims that (i) Plaintiffs offer insufficient, conclusory testimonial evidence, not wholly consistent with their Complaint; (ii) Plaintiffs' allegations are contradicted by the statements of other floor men with whom they worked; (iii) certain members of the putative collective action are bound by arbitration agreements, barring them from participation; (iv) Plaintiffs cannot establish a common policy because floor men are exempt under the FLSA; and (v) Plaintiffs' joint employment claims fall short.  While none of these arguments is ultimately availing at this stage in the litigation, the Court will address them in turn.

7

### a.   Plaintiffs' Evidence Is Sufficient for Conditional Certification

Defendants contend that Plaintiffs have failed to satisfy the factual showing for conditional certification, and that they "have not established that they are similarly situated to the Putative Collective and that they were all 'victims of a common policy or plan that violated the law.'" (Def. Opp. 5).

While a plaintiff cannot rely solely on "unsupported assertions" in seeking conditional certification, *Myers*, 624 F.3d at 555, "conditional certification may be granted on the basis of the complaint and the plaintiff's own affidavits," *Ramos* v. *Platt*, No. 13 Civ. 8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014); *see also Hallissey*, 2008 WL 465112, at *1 ("Plaintiffs may satisfy [the] requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").

Here, in addition to the allegations of their Complaint, Plaintiffs offer four factual declarations making similar claims of off-the-clock work and failure to pay overtime at the appropriate rate.  Specifically, each Plaintiff details the hours he was intended to work per shift, the circumstances requiring him to continue working past the end of his shift, and the lack of any overtime compensation for these additional hours.  (Racey Decl. ¶¶ 5-6, 8; McDonald Decl. ¶¶ 5, 7, 9; Williams Decl. ¶¶ 6-8; Abreu Decl. ¶¶ 5-6, 8).  Accordingly, the Court determines that Plaintiffs have satisfied their burden of demonstrating that they were subject to a common policy or plan that violated the law.

Further, at this early stage, it is well established that Plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 554 (internal quotation marks omitted); *see also Realite* v. *Ark Rest. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). There is a "consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes* v. *Nidaja, LLC*, No. 14 Civ. 9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015). As one court within this District has noted, "[w]hile it would be helpful to have the time and dates of [these] conversations, it is not surprising that plaintiffs would be unable to recall such specifics." *Guzman* v. *Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 525 (S.D.N.Y. 2015) (quoting *Garcia* v. *Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 549 (S.D.N.Y. 2015)).

In the instant matter, though Plaintiffs' declarations do not recite dates and times of particular conversations with other potential opt-in plaintiffs, Plaintiff Williams' declaration indicates that he "also worked alongside these other floor men and security employees and we were all not permitted to leave at 4:00 am but had to stay at the Club until the last employee (generally the manager) left." (Williams Decl. ¶ 13). From Plaintiffs' statements as a whole, and indeed Plaintiff Williams' recollection of working alongside other floor men after the close of the clubs, the Court "can fairly infer" that other floor men

"labored under similar working conditions and thus suffered the same violations of the FLSA." *Guzman*, 117 F. Supp. 3d at 524 (internal quotation and citation omitted).

> **b.    Competing Averments from Other Floor Men Are Not Properly Considered at This Stage**

Defendants further claim that Plaintiffs' statements "are entirely contradicted by some of the very [ ] floor men they worked with, as well as the managers of each of the respective clubs." (Def. Opp. 10). To that end, Defendants offer declarations from three floor men and three club managers, each of which describes the "floor man" role and disputes the purported shifts worked by Plaintiffs; as Defendants then argue, "three (3) of the floor men seemingly identified in the Named Plaintiffs' declarations ... submit declarations herewith contradicting Named Plaintiffs' conclusions that they were not compensated for 'post-shift work' because they all confirm that their shift ended when club business concluded and not at 4:00 a.m." (Def. Opp. 9; *see also* Dkt. #36-41).

At the first stage, however, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Ramos*, 2014 WL 3639194, at *3 (internal quotation marks omitted). Notably, Defendants' arguments and evidence concerning the accuracy of Plaintiffs' reported shift times and hours worked go to the merits, rather than to the propriety of conditional certification and notice:

> Although Defendants have submitted to the Court voluminous documentation in the form of Defendants' affidavits ... in opposition to Plaintiffs' motion,

10

> attempting to demonstrate that no violation occurred
> and no class should be conditionally certified, these
> materials clearly go to the merits of the case and
> Defendants' reliance upon them is misplaced at this
> stage of proceedings.

*Bhumithanarn,* 2015 WL 4240985, at *4 (internal citations omitted); *see also Winfield*, 843 F. Supp. 2d at 407 n.6 ("[C]ourts in this Circuit regularly conclude that [competing] declarations do not undermine the plaintiff's showing in the first stage of the conditional certification process.").  Moreover, "statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion." *Amador* v. *Morgan Stanley & Co. LLC*, No. 11 Civ. 4326 (RJS), 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013).  Accordingly, Defendants' proffered declarations countering Plaintiffs' claims cannot suffice to defeat the conditional certification motion.

Defendants separately contend that Plaintiffs' own Declarations contradict allegations in their Complaint, and that Plaintiff Abreu is not "similarly situated" because, potentially, he picked up his paycheck from a different manager.  However, the Court need not "engage in a person-by-person fact intensive inquiry of the declarations" submitted by Plaintiffs "in an attempt to iron out inconsistencies.  Indeed, this type of individualized inquiry sought by Defendant[s] is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit."  *Sharma* v. *Burberry Ltd.*, 52 F. Supp. 3d 443, 456 (E.D.N.Y. 2014); *cf. Hernandez* v. *Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF), 2012 WL 1193836, at *5

11

(S.D.N.Y. Apr. 6, 2012) ("Rather than engage in a lengthy discussion of each, suffice it to say that none defeats the required 'modest showing' because all would require the Court to resolve factual disputes or make credibility determinations.  As discussed above, such a judicial exercise would be inappropriate on this motion at this first stage.").  Because the allegations in the Complaint and the conduct complained of in the Declarations are sufficiently similar — all attesting to a flat rate of pay without overtime pay — the Court need not and should not engage in a more particularized inquiry of Plaintiffs' claims.

### c.     Arbitration Agreements Are Not Properly Considered at this Stage

Defendants next argue that the Court should deny conditional certification "because many potential opt-in plaintiffs have entered into binding arbitration agreements that preclude them from pursuing their claims in federal court." (Def. Opp. 12).  However, this contention is premature at the first stage as well.  "[C]ourts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination."  *Romero* v. *La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Lloyd* v. *J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 (LTS) (HBP), 2014 WL 2109903, at *7 (S.D.N.Y. Apr. 1, 2014) ("[T]he precedent in this District ... holds that the existence of an arbitration agreement is irrelevant at the conditional certification stage.").  While the Court may ultimately have to evaluate the validity of any purported arbitration agreements, such inquiry will

not prevent conditional certification at this stage, and, as discussed in greater detail below, the Court also will not limit recipients of the Notice on this ground.

### d.    Exemptions Under the FLSA Are Not Properly Considered at This Stage

Defendants then contend that Plaintiff floor men are indeed exempt from FLSA's overtime compensation requirements, as their duties place them in a "bona fide executive capacity." (Def. Opp. 15; *see also* 29 U.S.C. § 213(a)(1)). However, as with several of Defendants' above-referenced arguments, such an inquiry is premature and inappropriate at this preliminary stage. At the first step, "a defendant's assertion of the potential applicability of an exemption should not be permitted to overcome an otherwise adequate threshold showing by the plaintiff." *Aros* v. *United Rentals, Inc.*, 269 F.R.D. 176, 185 (D. Conn. 2010) (internal quotation marks omitted); *see also Jeong Woo Kim* v. *511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013) (holding defendants' assertions that plaintiff performed managerial tasks, rendering him exempt under FLSA, to be an "irrelevant … premature merits determination that is proscribed at the preliminary certification stage"). Thus, this assertion likewise will not impede certification.

### e.    Plaintiffs' Joint Employment Allegations Are Sufficient

Finally, Defendants claim that Plaintiffs' joint employment allegations are conclusory and insufficient, and that Defendants' proffered declarations from the various clubs' managers suffice to disprove Plaintiffs' statements. (Def. Opp. 17). As Defendants state, "the mere fact that Plaintiffs have alleged that

13

Defendants are joint employers (which they are not) does not absolve Plaintiffs of their burden of showing that Defendants maintained a common scheme or policy before conditional certification can be granted." (*Id.*).

"In determining whether multiple defendants constitute a single employer under the FLSA, courts consider the following factors:  [i] interrelations of operations, [ii] centralized control of labor relations, [iii] common management, and [iv] common ownership and financial control." *Lamb* v. *Singh Hospitality Grp., Inc.*, No. 11 Civ. 6060 (MKB), 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (citing *Perez* v. *Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013)); *see generally Echevarria* v. *Insight Med., P.C.*, 72 F. Supp. 3d 442, 458-59 (S.D.N.Y. 2014).

The Court disagrees with Defendants' assertion that Plaintiffs' claims fall short on this point.  Notably, the Complaint and Plaintiffs' Declarations indicate that (i) Plaintiffs understood Defendants Barry I. Lipsitz and Barry Lipsitz, Jr. to own and operate all three clubs; (ii) Plaintiffs were hired by a single individual (either hiring manager "Bob" or "Bobby" or, for one Plaintiff, Defendant Barry I. Lipsitz) for work to be performed at all three clubs; (iii) Plaintiffs' duties, hours, and compensation were essentially the same across all clubs; and (iv) Plaintiffs understood, from either a manager or club owner, that floor men would rotate among all clubs due to the common ownership and management.  (Compl. ¶¶ 16-17; Racey Decl. ¶¶ 2-3; McDonald Decl. ¶¶ 2-3; Williams Decl. ¶¶ 2-4; Abreu Decl. ¶¶ 2-3).  Further, two Plaintiffs indicated that when paychecks omitted pay for particular shifts worked at any

14

of the clubs, they contacted "Anita" or "Rose" from the clubs' joint office to obtain this missing pay.  (Racey Decl. ¶ 11; McDonald Decl. ¶ 12).

From these details, the Court finds Plaintiffs have adequately alleged that Defendants operated as a single, integrated enterprise.  *See, e.g.*, *Qing Tian Zhuo* v. *Jia Xing 39th Inc.*, No. 14 Civ. 2848 (SHS), 2015 WL 1514950, at *3-4 (S.D.N.Y. Apr. 1, 2015) (certifying collective action across multiple restaurant locations based on one employee's affidavit testifying to common ownership and personal conversations with employees who rotated among different locations).

## B.  The Court Will Order Notice

### 1.  Applicable Law

The Court having determined that notice is warranted, the next question concerns the form that notice will take.  While the FLSA does not specify the contents of the notice of pending litigation to be provided to potential opt-in plaintiffs, it vests the Court with broad discretion with respect to such notice. *See Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). Court-authorized notice is preferable because "[b]oth the parties and the court benefit from settling disputes about the content of the notice before it is distributed," and such notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."  *Hoffman-La Roche* v. *Sperling*, 493 U.S. 165, 172 (1989).

"Courts consider the overarching policies of the collective suit provisions and whether the proposed notice provides 'accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate.'" *Delaney*, 261 F.R.D. at 59 (quoting *Fasanelli* v. *Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)) (alteration in original). As with the conditional certification inquiry, a court evaluating the degree to which court-authorized notice is appropriate "does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." *Davis* v. *Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (citing *Lynch*, 491 F. Supp. 2d at 368-69 (S.D.N.Y. 2007)).

## 2.     Analysis of Defendants' Objections

With their motion, Plaintiffs provided a proposed Notice of Lawsuit With Opportunity to Join ("Proposed Notice") (Pelton Decl. Ex. F), a proposed Opt-In Consent Form ("Proposed Opt-In Form") (Pelton Decl. Ex. G), and a Deadline Reminder Letter ("Reminder Letter") (Pelton Decl. Ex. H).  In their Opposition papers, Defendants submit proposed modifications to the Proposed Notice and Proposed Opt-In Form.  (*See* Def. Opp. 20-25; Kimmel Decl. Ex. A-D).  While the parties have not submitted or discussed the translation of these proposed forms into other languages, the Court presumes the parties will translate the Notice, Opt-In Form, and Reminder Letter from English into any other language necessary.

16

In their opposition papers, Defendants contest several aspects of Plaintiffs' Proposed Notice, arguing that it should (i) contain a neutral statement of the claims and answer, making clear that Defendants deny Plaintiffs' claims; (ii) identify Defendants' attorneys; and (iii) require any opt-in plaintiffs to mail the completed form to the Clerk of Court, rather than Plaintiffs' counsel.  (Def. Opp. 20-22).  Defendants also argue that the Proposed Notice is misleading, as it (i) does not plainly state that it is not intended to imply the recipient is entitled to monetary recovery, and (ii) is not clear about opt-in plaintiffs' possible responsibilities, including responding to questions, sitting for depositions, and paying costs in the event Plaintiffs do not prevail. (*Id.* at 22-23).  Defendants also request a statement within the form indicating that opt-in plaintiffs may be barred if they have entered an employment agreement containing an arbitration clause or a class action waiver.  (*Id.* at 23 n.6).

With regard to the Proposed Opt-In Form, Defendants request addition of a sentence reiterating opt-in plaintiffs' potential responsibilities.  (*See* Kimmel Decl. Ex. C-D).  Plaintiffs further oppose distribution of the Reminder Letter entirely, but they do not submit proposed edits in the event the Court authorizes its distribution.  (Def. Opp. 25).

### a.    The Opt-In Period Will Be 60 Days

At the outset, Plaintiffs' proposed notice provides a 60-day opt-in period. (Pelton Decl. Ex. F).  Defendants seek to restrict the opt-in period to 30 days. (Kimmel Decl. Ex. A-B).  Plaintiffs' request for a 60-day period is "more

consistent with FLSA practice." *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011); *see also Bah* v. *Shoe Mania*, No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223, at *3 (S.D.N.Y. May 13, 2009) (60 days).  The Court believes that 30 days is too short a period to effect Notice on the potential opt-in plaintiffs, and will retain the deadline posed in Plaintiffs' Proposed Notice.

Further, in their revisions to the Proposed Notice, Defendants request a change to the date range of employment for opt-in plaintiffs.  (Kimmel Decl. Ex. A-B).  "[A]ny notice period generally shall be measured from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint."  *Hernandez* v. *Immortal Rise, Inc.*, No. 11 Civ. 4360 (RRM) (LB), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012); *see also Whitehorn*, 767 F. Supp. 2d at 451 ("[C]ourts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice.").

"However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Winfield*, 843 F. Supp. 2d at 410 (internal quotations and citations omitted).  The Court finds it proper for Plaintiffs to send the Final Notice to all floor men employed within three years of the date the Complaint was filed,

though Defendants may challenge the timeliness of individual opt-in plaintiffs' claims in the future.

### b. The Current Discussion of Defendants' Position on the Merits Is Adequate

Defendants next request that the Final Notice more fully state their position on the merits. (Def. Opp. 21). The Proposed Notice contains only a brief articulation of Defendants' position, but it also contains only a brief articulation of Plaintiffs' position. (Pelton Decl. Ex. F). As both parties receive equal treatment in the Proposed Notice, the statement of Defendants' position is adequate. *See Delaney*, 261 F.R.D. at 59; *see also Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *7 (S.D.N.Y. Sept. 16, 2013). Defendants' request is denied.

### c. The Final Notice Will Include Contact Information for Defendants' Counsel

Defendants request that the Final Notice include their counsel's contact information (Def. Opp. 21-22); Plaintiffs do not object to this request but request that "defense counsel's name and address [ ] not be added in areas likely to confuse prospective Plaintiffs" (Pl. Reply 8). FLSA notices routinely include this information. *See, e.g.*, *Moore* v. *Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011); *Gjurovich*, 282 F. Supp. 2d at 108. Accordingly, Defendants' request is granted.

As it stands, subsection VII of the Proposed Notice ("YOUR LEGAL REPRESENTATION IF YOU JOIN") states, "If you choose to join this suit and agree to be represented by the named plaintiffs through their attorneys, your

counsel in this action will be," and then includes contact information for Plaintiffs' counsel.  (Pelton Decl. Ex. F).  After this paragraph, the Court directs that an additional numbered paragraph, titled "COUNSEL FOR DEFENDANTS," be inserted, containing Defendants' counsel's name, mailing address, and phone number.  The Court believes this will serve to notify potential opt-in plaintiffs of Defendants' representation without risking confusion.

### d.   Opt-In Forms May Be Returned to Plaintiffs' Counsel

Plaintiffs' Proposed Notice advises opt-in plaintiffs to send their Opt-In Forms to Plaintiffs' counsel.  Defendants request the notice be changed to advise Plaintiffs to send their Opt-In Forms directly to the Court.  While some courts have required consent forms to be mailed to the Court rather than counsel, others have not.  *Compare Hallissey*, 2008 WL 465112, at *4 (requiring consent forms to be mailed to the Court "to prevent discouraging [the opt-in plaintiffs] from seeking outside counsel"), *with Francis* v. *A & E Stores, Inc.*, 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) (approving notice that required consent forms to be sent to counsel).  "Because the notice states that opt-in plaintiffs can select their own counsel, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel." *Delaney*, 261 F.R.D. at 60.  Defendants' request is denied; because the Proposed Notice states "you can join this lawsuit by counsel of your own choosing" (Pelton Decl. Ex. F), the phrasing is adequate, and the

Final Notice and Opt-In Forms shall direct opt-in plaintiffs to mail their consent forms to the Clerk of Court.

### e.   The Court Will Add Requested Wording Relating to Potential Monetary Recovery

Defendants argue that the Final Notice "does not plainly state that it is not intended to imply that the recipient of such notice would be entitled to monetary recovery." (Def. Opp. 22). The Court finds such a statement is reasonable, and directs that an additional sentence be added to the end of the current Subsection VI ("EFFECT OF JOINING THIS ACTION"), stating: "This Notice does not mean you are entitled to monetary recovery. Any such determination must still be made by the Court." *See Mazur* v. *Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) (DF), 2005 WL 3240472, at *6 (S.D.N.Y. Nov. 30, 2005) (permitting such language).

### f.   The Proposed Notice Adequately Describes Opt-In Plaintiffs' Potential Obligations

Defendants further claim that the Proposed Notice "fails to fully and accurately describe the effect of joining this case," and "is not completely clear about the opt-in plaintiffs' responsibilities upon joining the lawsuit." (Def. Opp. 23). Defendants ask that the Final Notice include language stating that opt-in plaintiffs may be required to respond to questions, sit for depositions, and pay costs in the event they do not prevail. (*Id.*).

District courts have divided on the propriety of such requests. *Compare Shajan* v. *Barolo, Ltd.*, No. 10 Civ. 1385 (CM), 2010 WL 2218905, at *2 (S.D.N.Y. June 2, 2010) (modifying plaintiffs' proposed notice to include the

21

possibility of discovery obligations), *Bah*, 2009 WL 1357223, at *4 (same), *and Hallissey*, 2008 WL 465112, at *4 (same), *with Garcia* v. *Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95-96 (E.D.N.Y. 2010) (declining to include potential discovery obligations in notice), *Delaney*, 261 F.R.D. at 59 (same), *and Diaz* v. *S & H Bondi's Dept. Store, Inc.*, No. 10 Civ. 7676 (PGG), 2012 WL 137460, at *7 (S.D.N.Y. Jan. 18, 2012) (refusing to include potential costs in notice).

The value of including cost-related language may be small, "given the remote possibility that such costs for absent class members would be other than de minimis," and given the possibility that the language may "intimidate putative class members from opting into the case." *Schwerdtfeger* v. *Demarchelier Mgmt., Inc.*, No. 10 Civ. 7557 (JGK), 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) (internal citation and quotation marks omitted). However, where parties seek only a "neutral and non-technical reference to discovery obligations," *Lujan* v. *Cabana Mgmt., Inc.*, No. 10 Civ. 755 (ILG), 2011 WL 317984, at *11 (E.D.N.Y. Feb. 1, 2011), the advantages of providing notice regarding potential obligations may outweigh the possibility of potential plaintiffs. *See id.* ("This Court does, however, think it appropriate to include a neutral and non-technical reference to discovery obligations, to insure that opt-in plaintiffs understand that their participation would entail greater obligations than participation in some Rule 23 class actions.").

The Proposed Notice here already states that opt-in plaintiffs "may be required to provide information, provide documents, or appear for a

deposition."  The only substantive difference between Plaintiffs' and Defendants' proposed language on this matter is Defendants' reference to payment of costs.  Courts in this Circuit have found references to costs "unnecessary and potentially confusing" to opt-in plaintiffs.  *Sexton* v. *Franklin First Fin., Ltd.*, No. 08 Civ. 4950 (JFB) (ARL), 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009).  Such language may also pose "an *in terrorem* effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree."  *Guzman* v. *VLM, Inc.*, No. 07 Civ. 1126 (JG) (RER), 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007).

Accordingly, the Court finds the language in the Proposed Notice adequately describes opt-in plaintiffs' potential discovery obligations, and no reference to potential costs is necessary.

### g.    Distribution and Publication of the Final Notice

Apart from their contentions regarding the substance of the Proposed Notice, Defendants claim that Plaintiffs' request for phone numbers and email addresses is improper, as these should be provided only where names and addresses alone prove inadequate in contacting potential opt-ins.  (Def. Opp. 23-24).  On this note, Defendants request that Plaintiffs move forward under an obligation of confidentiality, using any information solely for the purpose of sending the instant Notice.  (*Id.* at 24).  However, "[i]n general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."  *Sharma*, 52 F. Supp. 3d at 465; *see also Schear*

v. *Food Scope Am., Inc.*, 297 F.R.D. 114, 129 (S.D.N.Y. 2014) ("Courts routinely order discovery of names, addresses, e-mail addresses, and telephone numbers in FLSA actions.").  Separately, if an individual mailing of a Notice or Opt-In Form to any potential plaintiff is returned as undeliverable, Plaintiffs are authorized to mail these materials again to any other address that they may determine is appropriate.

Thus, the Court directs Defendants to provide Plaintiffs with a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members employed by them for the relevant time period.  The list shall be furnished within 14 days of the entry of this Order and is to be treated by the parties as confidential.  To the extent the parties have not yet entered into a Stipulation and Order of Confidentiality, they are ordered to do so directly for this purpose.

Plaintiffs further seek permission to require posting of the Final Notice in a conspicuous location at all three clubs, where it can be viewed by potential opt-in plaintiffs.  (Pl. Mem. 16).  Defendants contest this, arguing that this should be permitted only where other methods of contacting potential plaintiffs have failed.  (Def. Opp. 24-25).  They further contend that such posting will not prove useful for any former employees, and state that all current employees have signed preclusive arbitration agreements.  (*Id.*).  As the Court has previously expressed, the relevance of arbitration agreements is a merits-related issue which cannot be properly considered at this time; accordingly, such a possibility does not foreclose posting at the three locations.

24

Moreover, "[c]ourts in this circuit also routinely grant such requests" for posting on employee bulletin boards and in employee common spaces. *Jacob* v. *Duane Reade*, No. 11 Civ. 0160 (JPO), 2012 WL 260230, at *10 (S.D.N.Y. Jan. 27, 2012); *see also Whitehorn*, 767 F. Supp. 2d at 449 ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."). As the Court believes this will maximize potential opt-in plaintiffs' chances to learn of the pendency of the litigation and consider whether to opt in, the Court will permit the Final Notice to be posted in common, non-public employee spaces of each Defendant Club at issue.

### h.   The Court Will Authorize the Proposed Opt-In Form

Defendants propose additional language regarding opt-in plaintiffs' possible discovery obligations. (Def. Opp. 23). In keeping with the Court's decision at subsection 2(a)(vi) of this Opinion above, the Court will require insertion of one sentence, echoing the Notice form, stating: "I understand that I may be required to provide information, provide documents, or appear for a deposition." Given that the Court has found that Plaintiffs adequately alleged a single, integrated enterprise, however, the Court will not require the opt-in plaintiffs to disaggregate the time periods worked at each of the three clubs, as proposed by Defendants. (*See* Kimmel Decl. Ex. C-D).

### i.   The Court Will Authorize the Proposed Reminder Letter

Finally, Plaintiffs seek authorization to send a deadline reminder letter during the opt-in period, though they do not specify at what point during the

period this will be sent.  (Pl. Mem. 18-19).  Defendants argue that Plaintiffs'
proposed Reminder form is unnecessary, as they have not made a showing
regarding its utility, and it will serve only to "badger" possible opt-in plaintiffs.
(Def. Opp. 25).  The Court will permit such a letter, in accordance with the
reasoning of other courts in this District.  *See, e.g.*, *Chhab* v. *Darden Rests.,
Inc.*, No. 11 Civ. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20,
2013) ("Given that notice under the FLSA is intended to inform as many
potential plaintiffs as possible of the collective action and their right to opt-in,
we find that a reminder notice is appropriate." (collecting cases)); *see also
Michael* v. *Bloomberg L.P.*, No. 14 Civ. 2657 (TPG), 2015 WL 1810157, at *4
(S.D.N.Y. Apr. 17, 2015) (same); *Morris* v. *Lettire Const. Corp.*, 896 F. Supp. 2d
265, 275 (S.D.N.Y. 2012) (same) (citing *Harris* v. *Vector Mktg. Corp.*, 716 F.
Supp. 2d 835, 847 (N.D. Cal. 2010)); *cf. Guzelgurgenli* v. *Prime Time Specials
Inc.*, 883 F. Supp. 2d 340, 357-58 (E.D.N.Y. 2012) (reviewing split among
courts regarding reminder notices, and denying request for reminder notice
without prejudice to its renewal if plaintiffs explained why such notice was
necessary under the circumstances).

## CONCLUSION

For the reasons set forth herein, Plaintiffs' motion for conditional certification of the FLSA class is GRANTED.

Plaintiffs are hereby ORDERED to submit a revised version of the Proposed Notice, Opt-In Form, and Reminder Letter, reflecting the Court's modifications and any other appropriate modifications, for final review within seven days of the date of this Order.

To the extent not previously done, Defendants are hereby ORDERED to provide Plaintiffs with the names and last known addresses, telephone numbers, and email addresses of all potential plaintiffs within 21 days of the date of this Order.

Plaintiffs are further ORDERED to mail the final Notice and Consent to Join no later than 30 days after the Court issues final authorization of the Proposed Notice.

Plaintiffs are further ORDERED to provide a list of all opt-in plaintiffs to Defendants within 14 days of the conclusion of the opt-in period.

The Clerk of Court is directed to terminate Docket Entry 29.

SO ORDERED.

Dated:      May 23, 2016
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge